# 23-724

## In the
## United States Court of Appeals
### For the Second Circuit

$\diamond$

CONNECTICUT CITIZENS DEFENSE LEAGUE, INC., OREL JOHNSON,
ANNE CORDERO, JAMIE EASON and SHAQUANNA WILLIAMS,

*Plaintiffs-Appellants,*

– v. –

JASON THODY, RENEE DOMINGUEZ and REBECA GARCIA,

*Defendants-Appellees,*

– and –

FERNANDO SPAGNOLO,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

## BRIEF FOR DEFENDANTS-APPELLEES

KARSTEN & TALLBERG, LLC
*Attorneys for Defendants-Appellees*
500 Enterprise Drive, Suite 4B
Rocky Hill, Connecticut 06067
(860) 233-5600

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................iv

COUNTER-STATEMENT OF THE ISSUES .........................................1

COUNTER-STATEMENT OF THE CASE ............................................1

SUMMARY OF THE ARGUMENT .....................................................5

ARGUMENT

I.  Counter-Statement of Standard of Review ......................................6

II.  The District Court Did Not Err in Dismissing CCDL's
    Claims for Lack of Associational Standing ......................................7

    A. This Circuit Has Held for Fifty Years that Organizations Cannot
       Bring § 1983 Claims in an Associational Capacity....................7

    B. This Circuit's Position on Associational Standing is *Not* in Plain
       Conflict with *Warth*, and More Recent Supreme Court Decisions
       Have Cast Doubt on the Continued Viability of Associational Standing ..9

    C. Even Under the Appellants' Proposed Standard, CCDL Would Lack
       Associational Standing Because Their Claims Would Be Precluded
       and/or Moot ...........................................................14

        1. *Warth* Expressly Prohibits Associations from Pursuing
           Damages on Behalf of its Individual Members ...........................14

        2. *Warth* Still Mandates an Actual Case or Controversy,
           and This Case Was Properly Dismissed as Moot .........................15

III.  The District Court Did Not Err in Dismissing Appellants'
     Equal Protection Claims for Failure to State a Claim Upon
     Which Relief Can Be Granted .......................................................16

i

A. The Appellants Failed to Allege That They Were Treated Differently Than Others Similarly Situated ..............................................17

B. The Appellants Further Failed to Allege That Any Purported Selective Enforcement Was Due to an Impermissible Motive ...............18

IV. The District Court Did Not Err in Dismissing Appellants' Claims for Damages On The Basis That Appellees Are Entitled To Qualified Immunity .......................................................................20

A. There Was No Procedural Error by the Defendants That Might Have Prevented the Court from Exercising its Discretion to Dismiss the Claims ...................................................................................21

B. The District Court Did Not Err in Exercising its Discretion to Act *Sua Sponte* ..................................................................................22

C. There Was No Violation of the Party Presentation Rule Because the Appellants Were Fully Aware of and Responded at Length to Chief Garcia's Assertion of Qualified Immunity .....................................24

D. The District Court Did Not Err in Finding That Chief Thody and Chief Dominguez were Entitled to Qualified Immunity on the Merits ...26

1. The Appellants Have Not Provided Any Authority that Supports Their Contention That the Right to Timely Firearm Processing Is Clearly Established ...................................26

2. The Appellants' Reliance on State Law is Misplaced and Would Further Fail to Meet the Requirement of Demonstrating a Clearly Established Right ...................................28

V. The District Court Did Not Abuse its Broad Discretion in Declining to Exercise Jurisdiction Under the Declaratory Judgment Act ...................................................................................30

A. The District Court Did Not Err in Using the Unique Circumstances of the COVID-19 Pandemic to Aid its Analysis ............32

B. The District Court Properly Found That a Declaratory Judgment Would Not Serve a Useful Purpose in Clarifying the Legal Issues nor in Finalizing the Controversy, and the Appellants Other Concerns Are Without Merit ................................................................. 33

CONCLUSION ......................................................................................... 35

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases:</u>

<u>Admiral Ins. Co. v Niagara Transformer Corp.</u>,
57 F.4th 85 (2d Cir. 2023)................................................................31

<u>Aguayo v. Richardson</u>,
473 F.2d 1090 (2d Cir. 1973)....................................................7, 8, 11

<u>Alexander v. Tangipahoa Parish Sheriff Dept.</u>,
No. 05-2423, 2006 WL 4017825 ................................................23, 24

<u>Ambrogio v. Board of Firearms Permit Examiners</u>,
42 Conn. Supp. 157 (1992) .........................................................29, 30

<u>Ashcroft v. al-Kidd</u>,
563 U.S. 731 (2011) ..........................................................................27

<u>Ashcroft v. Iqbal</u>,
556 U.S. 662 (2009) ............................................................................6

<u>Association of American Physicians & Surgeons v. United States</u>
<u>Food and Drug Administration</u>,
13 F.4th 531 (6th Cir. 2021)..................................10, 11, 12, 13, 14

<u>Bano v. Union Carbide Corp.</u>,
361 F.3d 696 (2d Cir. 2004)..............................................................15

<u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544 (2007) ............................................................................6

<u>Bernacchi v. First Chicago Insurance Company</u>,
52 F.4th 324 (2022)...........................................................................24

<u>California v. Texas</u>,
141 S.Ct. 2104 (2021) .......................................................................13

<u>Castro v. United States</u>,
540 U.S. 375 (2003) ..........................................................................25

iv

Connecticut Citizens Def. League, Inc. v. Lamont,
  465 F. Supp. 3d 56 (D. Conn. 2020), vacated, 6 F.4th 439 (2d Cir. 2021) ........2

Costello v. Home Depot U.S.A., Inc.,
  888 F. Supp. 2d 258 (D. Conn. 2012) ..............................................................25

Dash v. Mayers,
  No. 19-CV-414 (GBD) (JLC),
  2020 WL 1946303 (S.D.N.Y. Apr. 23, 2020)..................................................23

Davis v. Scherer,
  468 U.S. 183 (1984) ....................................................................................28, 29

Delhomme v. Caremark Rx Inc.,
  232 R.F.D. 573 (N.D.T.X. 2005) .....................................................................22

Do No Harm v. Pfizer Inc.,
  No: 22-cv-07908 (JLR), 2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022) .........9

Doe v. Delie,
  257 F.3d 309 (3d Cir. 2001)..............................................................................23

Does 1-2 v. Hochul,
  632 F. Supp. 3d 120 (E.D.N.Y. 2022) ..............................................................33

Dow Jones & Co. v. Harrods Ltd.,
  346 F.3d 357 (2d Cir. 2003)..............................................................................30

Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.,
  411 F.3d 384 (2d Cir. 2005)................................................................................7

Fenner v. City of N.Y.,
  2010 WL 3529529 (2d Cir. 2010)......................................................................3

Flast v. Cohen,
  392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)........................................12

Fund Liquidation Holdings LLC v. Bank of America Corporation,
  991 F.3d 370 (2021) ...........................................................................................6

Goldfarb v. Town of West Hartford,
    474 F. Supp. 2d 365 (D. Conn. 2007) ................................................................17

Graves v. City of Coeur D'Alene,
    339 F.3d 828 (9th Cir. 2003) ..............................................................................23

Hunt v. Wash. State Apple Advert. Comm'n,
    432 U.S. 333 (1977) ......................................................................10, 11, 12, 15

Kamen v. Kemper Fin. Servs. Inc.,
    500 U.S. 90 (1991) ..............................................................................................25

L-7 Designs, Inc. v. Old Navy, LLC,
    647 F.3d 419 (2d Cir. 2011) .................................................................................6

League of Women Voters of Nassau County v. Nassau County Bd. of Sup'rs,
    737 F.2d 155 (2d Cir. 1984) .............................................................................7, 8

Lewis v. Casey,
    518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ...................................12

Lexmark Int'l, Inc. v Static Control Components, Inc.,
    572 U.S. 118 (2014) ...........................................................................................13

Lisa's Party City, Inc. v. Town of Henrietta,
    185 F.3d 12 (2d Cir. 1999) .................................................................................19

Lujan v. Defs. of Wildlife,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ...................................11

McClean v. Cnty. Of Westchester,
    No. 17-CV-4492 (CS), 2018 WL 6329420 (S.D.N.Y. Dec. 3, 2018)..............23

Mullenix v. Luna,
    577 U.S. 7 (2015) ...............................................................................................27

National Motor Freight Traffic Association v. United States,
    372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963) ...........................................12

Nat'l Automatic Laundry & Cleaning Council v. Shultz,
    443 F.2d 689 (D.C. Cir. 1971) ..............................................................12

Nat'l Motor Freight Traffic Ass'n v. United States,
    205 F. Supp. 592 (D.D.C. 1962) ............................................................12

Neilson v. D'Angelis,
    409 F.3d 100 (2d Cir. 2005)...................................................................18

New York State Citizens' Coalition for Children v. Poole,
    922 F.3d 69 (2d Cir. 2019) ......................................................................8

New York State Citizens' Coalition for Children v. Velez,
    629 Fed. Appx. 92 (2d Cir. 2015) ...........................................................8

Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.,
    673 F.3d 84 (2d Cir. 2012).....................................................................31

Nnebe v. Daus,
    644 F.3d 147 (2d Cir. 2011)..............................................................8, 9

Office Solution Group, LLC v. National Fire Insurance Company of Hartford,
    544 F. Supp. 3d 405 ...............................................................................33

Otatti v. City of Amsterdam,
    No. 06-CV-1370, 2011 WL 1204762 (N.D.N.Y. Mar. 28, 2011) ....................23

Overhoff v. Ginsburg Development, L.L.C.,
    143 F. Supp. 2d 379 (S.D.N.Y. 2001)....................................................19

P.C. v. McLaughlin,
    913 F.2d 1033 (2d Cir. 1990)................................................................29

Payne v. Huntington Union Free School Dist.,
    101 F. Supp. 2d 116 (E.D.N.Y. 2000) ...................................................20

Peterson v. Utah,
    30 Fed. Appx. 937, 2002 WL 373978 (10th Cir. 2002) ........................23

Robison v. Via,
    821 F.2d 913 (2d Cir. 1987).............................................................29

Sonoda v. Cabrera,
    255 F.3d 1035 (9th Cir. 2001).......................................................23

Spence v. Hood,
    170 Fed. Appx. 928, 2006 WL 775151 (5th Cir. 2006)....................................23

Stoenescu v. Jablonsky,
    162 F.R.D. 268 (S.D.N.Y. 1995) .......................................................22

Telesca v. Long Island Housing Partnership, Inc.,
    443 F. Supp. 2d 397 (E.D.N.Y. 2006) .............................................21

TransUnion LLC v. Ramirez,
    141 S.Ct. 2190 (2021) ..................................................................12

U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.,
    508 U.S. 439 (1993) .....................................................................25

United Food & Com. Workers Union Loc. 751 v. Brown Group,
    517 U.S. at 555, 116 S.Ct. 1529.......................................................12

United States v. Adams,
    448 F.3d 492 (2d Cir. 2006)............................................................30

United States v. Sineneng-Smith,
    140 S. Ct. 1575 (2020) ..................................................................24

Warth v. Seldin,
    422 U.S. 490............................................... 7, 8, 9, 10, 11, 12, 14, 15, 16

Zahra v. Town of Southhold,
    48 F.3d 674 (2d Cir. 1995)..................................................... 16-17

**<u>Rules, Laws and Statutes:</u>**

28 U.S.C. § 2201(a) ...............................................................................30

42 U.S.C. § 1983.......................................................5, 7, 8, 9, 10, 11, 29

Conn. Gen. Stat § 29-28a(b) .................................................................29

Federal Rule of Civil Procedure Rule 8....................................................6

Federal Rule of Civil Procedure 12(b)....................................6, 22, 32, 33

Rule 41(a)(1)(A) ......................................................................................4

## **COUNTER-STATEMENT OF THE ISSUES**

1)     The district court did not err in dismissing CCDL's claims for lack of associational standing.

2)     The district court did not err in dismissing appellants' equal protection claims for failure to state a claim upon which relief can be granted.

3)     The district court did not err in dismissing appellants' claims for damages on the basis that defendants are entitled to qualified immunity.

4)     The district court properly exercised its discretion under the Declaratory Judgment Act in dismissing the appellants' claims for declaratory relief.

## **COUNTER-STATEMENT OF THE CASE**

In March of 2020, states across the country began to implement shutdowns in order to mitigate the spread of the COVID-19 pandemic.  Connecticut was no exception, and as part of a series of executive orders issued by Governor Ned Lamont, Executive Order 7E authorized police departments to "limit or eliminate fingerprinting hours to limit the transmission of COVID-19 or focus resources on critical public safety needs."[1]

---

[1] See EO 7E, Governor Lamont's Executive Orders (March 17, 2020), https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7E.pdf.

1

While the majority of citizens recognized the orders as common-sense restrictions enacted in the face of an unprecedented outbreak, appellant CCDL instead saw an opportunity. Along with six of its members, CCDL filed suit on May 9, 2020, against Governor Lamont, the Commissioner of the Department of Emergency Services and Public Protection, and the police chiefs of Ansonia, Bristol, Farmington, and Vernon, Connecticut, claiming violation of their rights under the Second Amendment and moving for a preliminary injunction to resume fingerprinting.[2]

Although the injunction was initially granted by the district court, this Court properly vacated the order on July 28, 2021, concluding that "(1) with respect to the individual plaintiffs, the [preliminary injunction] motion became moot in the district court; and (2) CCDL lacked organizational standing. Because the motion was moot and CCDL lacked standing, the district court had no jurisdiction to issue the [injunction]." Connecticut Citizens Def. League, Inc. v. Lamont, 6 F.4th 439, 441 (2d Cir. 2021).

Unbothered, CCDL next joined with the individual appellants to file a second action, this time against the Police Chiefs of Connecticut's four largest cities—Hartford, New Haven, Bridgeport and Waterbury. The allegations of the

---

[2] See Connecticut Citizens Def. League, Inc. v. Lamont, 465 F. Supp. 3d 56, 61, 64-65 (D. Conn. 2020), vacated, 6 F.4th 439 (2d Cir. 2021).

2

second action were substantially the same as those in the previous litigation, except that the appellants now attached an additional count in an attempt to circumvent the Second Circuit's associational standing rule.[3]

On March 28, 2023, the district court granted Chiefs Thody and Dominguez' motions to dismiss in full, finding that CCDL lacked standing, that the individual plaintiffs lacked standing to pursue injunctive relief, that the individual plaintiffs failed to state a claim for damages, and that the defendants were entitled to qualified immunity. The district court further declined to exercise its discretion under the Declaratory Judgment Act.

Still undeterred, appellants filed this appeal on April 27, 2023, despite the fact that all individual appellants have already received their permits,[4] and despite the fact that this Court already properly found that CCDL lacked standing to bring its claims. It is unclear why the appellants remain so persistent. Perhaps their

---

[3] See 08/30/2021 Complaint (Doc. 1), ¶¶ 95-104 ("Count 1—Violation of Second Amendment Right to Keep and Bear Arms"). Unfortunately for CCDL, "1983 is the exclusive federal remedy for violations of constitutional rights." 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 13, citing Fenner v. City of N.Y., 2010 WL 3529529, at *1 (2d Cir. 2010).

[4] Anne Cordero received her permit on November 17, 2021. 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 3. Orel Johnson received his permit on January 6, 2022. Id. at 4. Shaquanna Williams received her permit on February 18, 2022. Id. Individual plaintiff Jamie Eason, whose claims were exclusively against Waterbury Chief Spagnolo, was dismissed from the action when the plaintiffs filed a Rule 41(a)(1)(A) notice of voluntary dismissal against Chief Spagnolo. Id. at 1 n.1.

theory is that there are not already enough firearms on the streets of Connecticut, or that Connecticut's already financially distressed cities, including the state capitol, should dedicate more of their scarce resources to speedily approving firearm applications. If that is the case, the appellants are either ignorant to or disregard the epidemic of gun violence that not only plagues this state but is specifically concentrated in the exact cities that appellants chose to target.[5] Regardless, this litigation has gone on for too long.

## SUMMARY OF THE ARGUMENT

1) The district court correctly determined that CCDL lacks associational standing pursuant to the Second Circuit's longstanding rule that organizations may not bring § 1983 claims on behalf of their members.

---

[5] "Roughly 80% of all homicides and non-fatal shootings in Connecticut occur in Hartford, Bridgeport, New Haven and Waterbury." Mark Pazniokas, Mayors and Moms Call for Reforms to Target Repeat Gun Offenders, CT Mirror (Feb. 14, 2023), https://ctmirror.org/2023/02/14/ct-gun-violence-reform-proposal; see Christine Dempsey, How Hartford Plans To Recover After Deadliest Year in Decades, CT Insider (Feb. 6, 2023), https://www.ctinsider.com/news/article/hartford-year-deadly-gun-violence-homicide-rate-17757630.php ("[t]hirty-nine people were killed in Hartford in 2022, all but two from being shot … [t]he last year that many people died in homicides in the capital city was 2003"); Isabella Backman, Gun Violence is a Public Health Crisis, Yale School of Medicine (Aug. 11, 2022), https://medicine.yale.edu/news-article/gun-violence-is-a-public-health-crisisbut-hospital-based-invention-programs-can-help-break-the-cycle, ("[t]he level of community violence in Connecticut is staggeringly high").

2) Even adopting the appellants' proposed theory of associational standing, the district court would have been correct to dismiss CCDL's claims.

3) The district court correctly determined that the individual appellants did not state a claim for equal protection because the appellants failed to demonstrate both that were treated differently than others similarly situated, and that any purported selective treatment was due to an impermissible motive.

4) The district court properly exercised its discretion in addressing the defense of qualified immunity for Chiefs Thody and Dominguez because the Officers preserved the defense in their answer and because the appellants were not prejudiced.

5) The district court correctly determined that Chiefs Thody and Dominguez were entitled to qualified immunity on the merits because the appellants failed to establish that the right to a timely firearm permit was clearly established.

6) The district court properly exercised its discretion in declining to issue relief under the Declaratory Judgment Act by finding that the relief sought would not serve a useful purpose in clarifying the issues involved or otherwise finalize the controversy.

## **ARGUMENT**

### I.       **Counter-Statement of Standard of Review.**

"On appeal following a dismissal of a complaint for either lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or failure to state a claim under Rule 12(b)(6), we review the district court's decision *de novo*." Fund Liquidation Holdings LLC v. Bank of America Corporation, 991 F.3d 370, 379 (2021).   Regarding failure to state a claim, it is well-settled that under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  While the Court must accept as true all well-pleaded factual allegations, that requirement is "inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a Rule 12(b)(6) motion, a court may consider plaintiff's complaint, documents attached hereto as exhibits, documents incorporated by reference, and documents "integral" to plaintiff's claims.  L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011).  A court may also consider any matter of which it may take judicial notice.  Id.

A district court's decision declining to exercise jurisdiction over a declaratory judgment action is reviewed "deferentially, for abuse of discretion." Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d Cir.

2005). "Such abuse will be found only if the district court bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." Id.

## II. The District Court Did Not Err in Dismissing CCDL's Claims for Lack of Associational Standing.

The appellants first argue that the district court erred by following fifty years of Second Circuit precedent in dismissing CCDL's claims for lack of associational standing, claiming that the district court ruling stands in conflict with Warth v. Seldin, 422 U.S. 490 (1975). But not only has this Court previously ruled on this exact issue, definitively stating that the Second Circuit rule survives Warth; further, even under the appellants' proposed standard, the district court would have been correct to dismiss CCDL's claims.

### A. This Circuit Has Held for Fifty Years that Organizations Cannot Bring § 1983 Claims in an Associational Capacity.

In 1973, in Aguayo v. Richardson, 473 F.2d 1090, 1099 (2d Cir. 1973), this Court found that "neither [the] language nor the history [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violation of rights of members." And for exactly fifty years—forty-eight of those years post-Warth—the Second Circuit has consistently maintained this position. See League of Women Voters of Nassau County v. Nassau County Bd. of Sup'rs, 737 F.2d 155, 160 (2d Cir. 1984) ("[t]his Circuit has restricted organizational standing under § 1983 by interpreting the rights it secures to be personal to those purportedly

injured"); Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) ("[it] is the law of the Second Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983"); New York State Citizens' Coalition for Children v. Velez, 629 Fed. Appx. 92, 93 (2d Cir. 2015) ("[w]hen an organization brings suit under 42 U.S.C. § 1983, [] this Circuit has held that it must do so on its own behalf, rather than that of its members"); New York State Citizens' Coalition for Children v. Poole, 922 F.3d 69, 74-75 (2d Cir. 2019) ("[i]n a string of opinions, this Court has held that organizations suing under Section 1983 must, without relying on their members' injuries assert that their own injuries are sufficient to satisfy Article III's standing requirements").

Yet the appellants now seek to overturn a half century of precedent, presenting their request as novel in light of a Supreme Court decision from 1975, despite the fact that this exact argument was previously brought before the Court in Nnebe. There, this Court held:

> The plaintiffs argue that this rule is "contradicted by a raft of Supreme Court precedent" and "was effectively rejected by the Supreme Court in Warth v. Seldin." However, we reaffirmed the Aguayo rule in League of Women Voters nine years after Warth and have not reconsidered it. Accordingly, we are bound by the implicit determination of prior panels that the rule survives Warth "until such time as [our prior decisions] are overruled either by an *en banc* panel of our Court or by the Supreme Court."[6]

---

[6] Nnebe, 644 F.3d at 156 n.5 (citations omitted).

8

Notwithstanding this, the appellants parrot the argument already rejected in Nnebe, asking this Court to "overrule its post-Warth decisions that summarily concluded that organizations may not assert associational standing for 42 U.S.C. § 1983 claims."[7] But as seen below, the appellants vastly overstate the significance of Warth, which was not only limited in scope, but has been undermined by subsequent Supreme Court decisions.

**B.** **This Circuit's Position on Associational Standing is *Not* in Plain Conflict with *Warth*, and More Recent Supreme Court Decisions Have Cast Doubt on the Continued Viability of Associational Standing.**

The Appellants misrepresent the scope of Warth, incorrectly stating that "Warth held that associations are entitled to invoke the federal courts' jurisdiction in a §1983 action."[8] In fact, in ultimately *rejecting* the petitioners' right to associational standing, the Supreme Court in Warth only stated that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." Id. at 511.[9] Contrary to appellants' assertion, the Supreme Court never rendered an explicit position on the applicability of associational standing to claims under § 1983.

---

[7] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 9.
[8] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 12.
[9] This language has even been referred to as "dicta" by at least one court in this circuit. See Do No Harm v. Pfizer Inc., No: 22-cv-07908 (JLR), 2022 WL 17740157 at *13 (S.D.N.Y. Dec. 16, 2022).

Instead, the Supreme Court's current associational standing doctrine more broadly "sometimes permits an entity to sue over injuries suffered by its members even when the entity itself alleges no personal injury."[10] This doctrine, adopted from <u>Warth</u> in <u>Hunt v. Wash. State Apple Advert. Comm'n</u>, 432 U.S. 333, 342-43 (1977), states that "[a]n association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." <u>Id.</u> at 333.

Far from being in plain conflict with <u>Warth</u>, as the appellants suggest,[11] the Second Circuit's more specific rule can reasonably be seen as congruent with the third prong of the associational standing doctrine, prohibiting standing when the claim asserted or the relief requested might require the participation of individual members. As this Circuit originally found fifty years ago, there are legitimate reasons for restricting associational standing for claims under § 1983: "Section 1983 confers a cause of action on 'any citizen of the United States or other person within the jurisdiction thereof who has been deprived under color of state law 'of any rights, privileges, or immunities secured by the Constitution and laws.'

---

[10] <u>Association of American Physicians & Surgeons v. United States Food and Drug Administration</u>, 13 F.4th 531, 537 (6th Cir. 2021).

[11] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 11.

Neither this language nor the history [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violation of rights of members." Aguayo, 473 F.2d at 1099.

Further, more recent Supreme Court decisions have cast doubt on the constitutionality of the associational standing doctrine developed under Warth and Hunt, and are instead trending towards a position more in line with the Second Circuit's longstanding rule. This was observed by the Sixth Circuit in Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin., 13 F.4th 531,[12] which advanced three reasons that the Supreme Court's traditional doctrine could not be reconciled with its more recent guidance.

First, the Sixth Circuit noted that the doctrine conflicts with the "irreducible constitutional minimum" of standing:

> The "irreducible constitutional minimum" of standing requires a plaintiff to allege a particularized injury. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). How, then, can the Association sue in this case if it has *not* suffered an injury? The Court previously said that the first associational-standing factor (that an entity's members have suffered an injury that would give them standing if they sued) satisfies this element. United Food & Com. Workers Union Loc. 751 v. Brown Group, 517 U.S. at 555–56, 116 S.Ct. 1529. Yet the Court's recent cases suggest that this nonparty injury alone does not suffice. These cases hold that historical practice should guide courts

---

[12] See also Associations, Stand Down: Sixth Circuit Casts Doubt on Associational Standing, JD Supra (last visited July 24, 2023), https://www.classactioncountermeasures.com/2021/09/articles/class-action/associations-stand-down-sixth-circuit-casts-doubt-on-associational-standing.

when deciding whether an injury satisfies Article III's requirements. See TransUnion LLC v. Ramirez, 141 S.Ct. 2190, 2204 (2021).

Ass'n of Am. Physicians, 13 F.4th at 538.

And significantly, when searching for the root of the inherent conflict, the Sixth Circuit found that the associational standing doctrine "arose more from historical accident than practice,"[13] noting that earlier cases do not rely on any historical analogy when permitting associational standing:

> [Early cases] instead describe associational standing as part of the then ongoing "revision of judicial thinking on the standing question" that had "deprived standing of meaningful vitality." Nat'l Automatic Laundry & Cleaning Council v. Shultz, 443 F.2d 689, 693 (D.C. Cir. 1971). The Supreme Court has since overturned this judicial thinking—epitomized by cases like Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)—and reinvigorated standing as a core part of the separation of powers. Lewis v. Casey, 518 U.S. 343, 353 n.3, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Associational standing thus may be nothing more than an outdated relic from Flast's short-lived age.

_____

[13] "[The Supreme Court's] trail of citations suggests that this standing arose more from historical accident than practice. When adopting the associational-standing test in Hunt, the Court cited Warth, but not any common-law analog. But Warth, too, included no justification rooted in tradition. It instead cited National Motor Freight Traffic Association v. United States, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963) (per curiam). Warth, 422 U.S. at 511, 95 S.Ct. 2197. There, a lower court had held that motor-carrier associations could not challenge an agency order harming their members because they lacked standalone injuries. Nat'l Motor Freight Traffic Ass'n v. United States, 205 F. Supp. 592, 593–94 (D.D.C. 1962) (Burger, J.). The Supreme Court disagreed in a one-paragraph opinion, finding that the associations were "proper representatives" of their members. 372 U.S. at 247, 83 S.Ct. 688. For a third time, the Court identified no historical support." Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin., 13 F.4th 531, 538 (6th Cir. 2021).

Ass'n of Am. Physicians, 13 F.4th at 539.

Second, the Sixth Circuit noted that associational standing "is in tension with" the Court's recent guidance on Article III remedies because "it creates an inherent mismatch between the plaintiff and the remedy… [a]n injunction that bars a defendant from enforcing a law or regulation against the specific party before the court—the *associational* plaintiff—will not satisfy Article III because it will not redress an injury."[14]

Finally, the Sixth Circuit reasoned that the Supreme Court's precedent on prudential standing had recently been called into doubt "on the ground that prudential standing sits uncomfortably next to the court's 'virtually unflagging' duty to decide cases within their jurisdiction." Ass'n of Am. Physicians, 13 F.4th at 542 (quoting Lexmark Int'l, Inc. v Static Control Components, Inc., 572 U.S. 118, 126 (2014). Noting the close relationship between prudential and associational standing, the Sixth Circuit posited that "Lexmark's skepticism of prudential standing suggests that the Court should reexamine all of the doctrines that have grown out of it … it is hard to see how the Supreme Court's more recent caselaw on standing has not undercut its associational standing test." Ass'n of Am. Physicians, 13 F.4th at 542.

---

[14] Ass'n of Am. Physicians, 13 F.4th at 540. See California v. Texas, 141 S.Ct. 2104, 2115 (2021).

Because the district court here correctly followed Second Circuit precedent, and because that precedent is not even in direct conflict with <u>Warth</u>, it cannot reasonably be said that there was error in dismissing CCDL's claims for lack of associational standing.  And further, the Supreme Court's more recent jurisprudence suggests that the associational standing doctrine derived from <u>Warth</u> would have difficulty surviving close reexamination today.

**C.    Even Under the Appellants' Proposed Standard, CCDL Would Lack Associational Standing Because Their Claims Would Be Precluded and/or Moot.**

Further still, CCDL would continue to lack associational standing even under their own standard—as <u>Warth</u> itself prohibits associations from recovering damages on behalf of its individuals, and any prospective relief sought has already been properly dismissed as moot.

**1.    *Warth* Expressly Prohibits Associations from Pursuing Damages on Behalf of its Individual Members.**

As noted above, the appellants fail to acknowledge the limited scope of <u>Warth</u>, which explicitly precluded associations from pursuing damages on behalf of its individual members.  "Whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought …in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought

14

has been [prospective].… The present case, however, differs significantly as here an association seeks relief in damages." <u>Id.</u> at 515.

This limitation has previously been noted by the Second Circuit in <u>Bano v. Union Carbide Corp.</u>, 361 F.3d 696 (2d Cir. 2004). In rejecting the plaintiffs' argument for associational standing, and after reviewing <u>Warth</u>, the <u>Bano</u> court stated "[w]e know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members." <u>Id.</u> at 714. Thus, to the extent that appellants suggest CCDL has associational standing to pursue damages on behalf of the individual plaintiffs here, there would be no error even under the <u>Warth</u> standard.

## 2. *Warth* Still Mandates an Actual Case or Controversy, and This Case Was Properly Dismissed as Moot.

<u>Warth</u> is also clear that "the possibility of such representational standing [in the absence of injury to an association] does not eliminate or attenuate the constitutional requirement of a case or controversy. The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action.…" <u>Warth</u>, 422 U.S. at 511. And pursuant to the first prong of <u>Warth</u> and <u>Hunt's</u> associational standing test, for CCDL to have standing it must show that "its members would otherwise have standing to sue in their own right." <u>Hunt</u>, 432 U.S. at 343.

Here, the district court has already correctly determined that there is no active case or controversy. All of the individual plaintiffs have received their permits, and there are no allegations of current or imminent delays in the fingerprinting or processing of permits. Thus, "[plaintiffs] are no longer being deprived of a process under which they may timely obtain municipal firearms…[and any] claimed threat of future injury is too abstract for purposes of injunctive relief, which is designed to address actual and imminent injury to a plaintiff."[15] Because the claims of the individual plaintiffs have been properly dismissed as moot, and because the individuals would therefore lack standing to sue in their own right, there would be no error in the district court's finding of lack of associational standing even under <u>Warth</u>.

## III. The District Court Did Not Err in Dismissing Appellants' Equal Protection Claims for Failure to State a Claim Upon Which Relief Can Be Granted.

To maintain an equal protection claim based on selective enforcement, a plaintiff must allege that "(1) compared with others similarly situated, [they were] selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." <u>Zahra v. Town of Southhold</u>, 48 F.3d 674, 683

---

[15] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 15-16.

(2d Cir. 1995) (internal quotation marks omitted).  Here, the appellants

unquestionably failed to satisfy both prongs, and the district court correctly

dismissed their equal protection claims accordingly.

### A.    The Appellants Failed to Allege That They Were Treated Differently Than Others Similarly Situated.

The appellants did not even come close to alleging facts that would show the

district court that they were treated differently than appropriate comparators,

instead advancing the argument that the individuals living in Hartford, Bridgeport,

and New Haven were treated differently from individuals residing *in other*

*Connecticut municipalities*.[16]  As the district court correctly held, that argument

has no relevance to an equal protection claim.  "The fact that an applicant in one

town may be fingerprinted faster than an applicant residing in another town has no

bearing on whether Defendants have engaged in differential treatment…there is no

allegation that Defendants have treated any municipal permit application

differently than any other application *over which they have authority*."[17]

The "similarly situated" element is "the *sine qua non*" of an equal protection

claim based on selective enforcement; Goldfarb v. Town of West Hartford, 474 F.

Supp. 2d 365, 368 (D. Conn. 2007).  "The standard for determining whether

---

[16] See 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 21; 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 19.
[17] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 19-20.

another person's circumstances are similar to the plaintiff's must be … *prima facie* identical." Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

Given this standard, it should be a minimum requirement that an alleged comparator would be an individual residing in one of the three respective cities. Indeed, the appellants themselves have conceded that the district court was correct to note that appellees did not have authority to process permits outside of their own jurisdictions.[18]  To combat this, appellants now contend that the district court "erred by narrowing the universe in which the Appellees' selective enforcement of [permitting] occurs,"[19] making the convoluted argument that, because the appellees are agents of the State of Connecticut, their actions may properly be compared to the actions of officers in all other municipalities.

This argument is without merit.  Even accepting the appellants' absurd premise that they could be compared to individuals in other municipalities over which the appellees have no authority, appellants have not reconciled their failure to allege similar circumstances.  Nor could they, as it axiomatic that circumstances in Hartford are different from Stamford which are different from Greenwich, and on and on.

---

[18] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 18.
[19] Id.

**B.**     **The Appellants Further Failed to Allege That Any Purported Selective Enforcement Was Due to an Impermissible Motive.**

The Appellants fall similarly flat in their attempt to meet the second requirement of a viable equal protection claim, an allegation of an impermissible motive. "The key issue in an equal protection claim alleging selective enforcement is impermissible motive. Thus, it must be shown that the disparate treatment alleged was motivated by an intention to discriminate based on impermissible considerations, such as race or by a malicious or bad faith intent to injure the person."[20] But as the district court stated, "the individual plaintiffs have not alleged that the defendant police chiefs delayed their applications due to their race, their religion, or a generalized desire to inhibit Plaintiffs' exercise of the Second Amendment."[21]

The appellants' re-statement of the facts alleged in ¶¶ 40-50 of their Complaint, which are devoid of even the implication of any purposeful or targeted conduct, does nothing to further their argument here. Nor does the re-statement of their "general, conclusory"[22] claim that the appellees' conduct created a disparate impact on cities with higher black and Hispanic populations. For one, as the

---

[20] Overhoff v. Ginsburg Development, L.L.C., 143 F. Supp. 2d 379, 388 (S.D.N.Y. 2001) (citing Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999).

[21] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 20.

[22] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 19-20.

19

district court noted, the complaint omits the demographic information of the individual plaintiffs.[23]  And there is no allegation by any individual that their race subjected them to a longer waiting period than residents in their own or another municipality.  "Without an allegation identifying an impermissible motive, [a] [c]omplaint fails to state a claim on which relief may be granted."  Payne v. Huntington Union Free School Dist., 101 F. Supp. 2d 116, 119 (E.D.N.Y. 2000).

Further, correlation does not equal causation.  Absent any specific allegation of impermissible motive, the racial demographic of these cities has zero relevance.  And finally, if appellants are attempting to argue correlation, there are much more reasonable and verifiable explanations for the delays—such as the financial distress or the disproportionately high number of permit applications in these three cities—that further highlight the deficiencies of appellants' attempt to allege sufficient comparators.

The district court did not err in finding that the appellants failed to allege sufficient comparators, nor did it err in finding that the appellants further failed to allege an impermissible motive, and appellants' equal protection claim was thus appropriately dismissed for a failure to state a claim upon which relief could be granted.

---

[23] See id.

**IV.    The District Court Did Not Err in Dismissing Appellants' Claims for Damages On The Basis That Appellees Are Entitled To Qualified Immunity.**

In attempting to overturn the district court's finding that Chief Dominguez and Chief Thody were entitled to qualified immunity, the appellants have painted the appellees' actions as a "procedural tactic" and an "ambush."  Nonsense.  In fact, Chiefs Dominguez and Thody preserved the defense of qualified immunity in their answer, and the district court then properly exercised its discretion to address an argument that materially overlapped with the argument presented by Chief Garcia, where the issue had further been fully briefed by Chief Garcia and responded to by the appellants.

**A.    There Was No Procedural Error by the Defendants That Might Have Prevented the Court from Exercising its Discretion to Dismiss the Claims.**

The appellants argue that courts permitting the "procedural tactic" employed by Chiefs Dominguez and Thody have been clear that not only must a defendant preserve the defense in their answer, they "must invoke it in a motion to dismiss."[24] But a review of the authority provided by appellants does nothing to support their claim:

In Telesca v. Long Island Housing Partnership, Inc., 443 F. Supp. 2d 397, 405 (E.D.N.Y. 2006), the court stated only that, "[a]lthough courts will generally

---

[24] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 26.

rule on an untimely motion to dismiss that is filed after the answer, the defendant's previously filed answer must expressly preserve the defense." Here, there is no question that appellants expressly preserved the defense of qualified immunity in their answer on November 3, 2021.[25]

In Delhomme v. Caremark Rx Inc., 232 R.F.D. 573, 576 (N.D.T.X. 2005), the court stated that "courts do not mechanically or routinely deny any motion made after a responsive pleading as untimely. If the defendant has previously included [an affirmative defense] in his or her answer to the complaint, thereby giving notice of the defense, then courts will generally permit a Rule 12(b)(6) motion to be filed after the answer."

And in Stoenescu v. Jablonsky, 162 F.R.D. 268, 270, n.4 (S.D.N.Y. 1995), the court merely stated that "as noted, [defendant] filed an answer, asserting an affirmative defense…by asserting that defense in its answer, [defendant] preserved its right to assert that defense in the instant motion."

It is unclear in what manner appellants believe that any of these cases further their argument, as none of them address the actual issue as presented by the appellants—the district court's decision to address an argument not raised in appellees' motion to dismiss. If the implication is that appellees' conduct here

---

[25] 11/03/2021, Answer to Complaint with Affirmative Defenses (Doc. 26).

somehow precluded the court from acting *sua sponte*, that has not been supported, and as shown below, is incorrect.

### B. The District Court Did Not Err in Exercising its Discretion to Act *Sua Sponte*.

District courts in the Second Circuit have explicitly held that "a court may address the issue of qualified immunity *sua sponte* in the motion-to-dismiss context." Dash v. Mayers, No. 19-CV-414 (GBD) (JLC), 2020 WL 1946303 at *8 n.9 (S.D.N.Y. Apr. 23, 2020); see McClean v. Cnty. Of Westchester, No. 17-CV-4492 (CS), 2018 WL 6329420, at *12 n.14 (S.D.N.Y. Dec. 3, 2018) ("[a]lthough Defendants have not advanced a qualified-immunity defense, the court can address the issue *sua sponte*"); Otatti v. City of Amsterdam, No. 06-CV-1370, 2011 WL 1204762, at *2 (N.D.N.Y. Mar. 28, 2011) (pursuant to summary judgment ruling in a companion case, "the court *sua sponte* dismissed the complaint in the instant case against [defendants] on the basis of qualified immunity").

Additionally, an extensive review by the United States District Court for the Eastern District of Louisiana concluded that "it appears the majority of courts… hold that the court may raise the issue of qualified immunity *sua sponte*."[26] And

---

[26] Alexander v. Tangipahoa Parish Sheriff Dept., No. 05-2423, 2006 WL 4017825 at *5 (citing, *inter alia*, Graves v. City of Coeur D'Alene, 339 F.3d 828 (9th Cir. 2003); Doe v. Delie, 257 F.3d 309, 312, 322 n. 13 (3d Cir. 2001); Sonoda v. Cabrera, 255 F.3d 1035, 1039 (9th Cir. 2001); Spence v. Hood, 170 Fed. Appx. 928, 2006 WL 775151, at * 1, *2 (5th Cir. 2006); Peterson v. Utah, 30 Fed. Appx. 937, 2002 WL 373978, at *1 (10th Cir. 2002)).

most significantly, among the courts cited by the Eastern District of Louisiana as the minority who declined to raise the issue on their own, all declined due to a defendant's failure to even plead qualified immunity as a defense[27]—here, that is not the case. The appellants have cited no authority for the proposition that a court cannot raise the issue of qualified immunity on its own, let alone when it has been properly preserved as an affirmative defense.

### C. There Was No Violation of the Party Presentation Rule Because the Appellants Were Fully Aware of and Responded at Length to Chief Garcia's Assertion of Qualified Immunity.

Considering the commonality of the material allegations against the three defendants in this action, the appellants' argument that the district court here subjected them to "litigation by ambuscade" is laughable. The appellants claim that this ambush was in violation of the party presentation rule, but that rule "stands for the proposition that parties 'frame the issues for decision,' whereas the courts play 'the rule of neutral arbiter of matters the parties present.'" Bernacchi v. First Chicago Insurance Company, 52 F.4th 324, 328 (2022), citing United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020). Here, there is no question that the issue of qualified immunity was timely raised in Chief Garcia's motion to dismiss, and the appellants themselves have acknowledged notice and the opportunity to

---

[27] Alexander v. Tangipahoa Parish Sheriff Dept., No. 05-2423, 2006 WL 4017825 at *5.

"respond at length" to that argument.[28]  Thus, the district court properly exercised

its discretion to address an issue arising out of the same claims when it had already

been preserved by Chiefs Thody and Dominguez in their answer.

Further, "the party presentation rule, however, is not ironclad."  Castro v.

United States, 540 U.S. 375, 386 (2003).  "A court is not limited to the particular

legal theories advanced by the parties, but rather retains the independent power to

identify and apply the proper construction of governing law."  Kamen v. Kemper

Fin. Servs. Inc., 500 U.S. 90, 99 (1991) (internal quotations omitted).  "The

Supreme Court has recognized that a court may consider an issue antecedent to and

ultimately dispositive of the dispute before it, even an issue the parties fail to

identify and brief."  U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.,

508 U.S. 439, 447 (1993) (internal quotations omitted).

The appellants have not made the argument that a qualified immunity

analysis regarding Chiefs Thody or Dominguez would materially differ from one

regarding Chief Garcia.  Nor could they.  In fact, on April 13, 2022, the district

court denied Chief Garcia's motion to sever the underlying action precisely

because "the interests of judicial economy are better served by resolving the

pending motions to dismiss together, particularly because they contain similar legal

arguments with respect to issues of justiciability."  04/13/22, Order Denying

---

[28] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 27.

Motion to Sever and Granting Motion for Extension of Time (Doc. 57) (citing

Costello v. Home Depot U.S.A., Inc., 888 F. Supp. 2d 258, 263 (D. Conn. 2012)

("the decision whether to grant a motion to sever… involves considering whether

judicial economy would be facilitated and whether the claims present some

common question of law or fact")).  The same principles guiding the above ruling

apply here.  Because this issue was already before the district court and because the

appellees were not prejudiced due to the notice and material similarity of Chief

Garcia's defense, the court did not err in properly exercising its discretion to act in

the interests of judicial efficiency.

### D.    The District Court Did Not Err in Finding That Chief Thody and Chief Dominguez were Entitled to Qualified Immunity on the Merits.

In addition to properly exercising its discretion to reach the issue, there was

no error by the district court in finding that Chiefs Dominguez and Thody were

entitled to the defense of qualified immunity on the merits.  While the appellants

have attempted to complicate the analysis, the district court correctly narrowed the

inquiry to a simple question—whether the right to timely process is *clearly*

*established*.  And as the court found, "the answer is a resounding no."[29]

---

[29] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 24.

1. **The Appellants Have Not Provided Any Authority that Supports Their Contention That the Right to Timely Firearm Processing Is Clearly Established.**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (emphasis added). "We do not require a case directly on point, but *existing precedent must have placed the statutory or constitutional question beyond debate*." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (emphasis added).

Here, the district court could not have been clearer in its decision: "the individual plaintiffs have not cited any authority supporting that they are entitled to action on their firearm application within a certain timeframe. Without it, the court cannot find that plaintiffs are entitled to such a right, let alone that such a right is clearly established… ."[30]

Despite this, in their opening paragraph on the subject, appellants state that the district court's decision "ignores controlling law and stretches the doctrine of qualified immunity beyond any limit of rational logic."[31] But in the eight pages

---

[30] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 25 (internal quotation marks omitted).
[31] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 29.

that follow, the appellants *still* refuse to provide a single example of this purported

authority.  Rather, appellants merely point out that they are not required to identify

precedent with identical facts, and that the generalized right to carry a gun outside

the home is clearly established—two points already explicitly noted by the district

court[32] that do nothing to further their argument here.

> ## 2. The Appellants' Reliance on State Law is Misplaced and Would Further Fail to Meet the Requirement of Demonstrating a Clearly Established Right.

Apparently resigned to the fact that they have no controlling authority on the

issue, the appellants instead turn to Connecticut's regulatory statutes to form the

basis of their §1983 claims.  But in <u>Davis v. Scherer</u>, 468 U.S. 103 (1984), the

Supreme Court previously rejected this exact approach:

> Appellee submits that appellants, by failing to comply with a clear state regulation, forfeited their qualified immunity from suit for violation of federal constitutional rights. …  In appellee's view, official conduct that contravenes a statute or regulation is not "objectively reasonable" because officials fairly may be expected to confirm their conduct to such legal norms. …  Appellee urges therefore that a defendant official's violation of a clear statute or regulation, although not itself the basis of suit, should deprive the official of qualified immunity from damages for violation of other statutory or constitutional provisions. …  We decline, however, to adopt [appellee's reasoning].  **Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.**
>
> We acknowledge of course that officials should conform their conduct to applicable statutes and regulations. …  Appellee's submission, if adopted,

---

[32] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 23-24.

would disrupt the balance that our cases strike between the interest in vindication of citizens' constitutional rights and in public officials' effective performance of their duties. **The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated**.

Davis v. Scherer, 468 U.S. 183, 194-95 (1984) (emphasis added); see Robison v. Via, 821 F.2d 913, 922 (2d Cir. 1987) ("We reject the district court's view that Via and Harrison were not entitled to qualified immunity because [they violated state statutes]… a violation of state law neither gives Robinson a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim"); P.C. v. McLaughlin, 913 F.2d 1033, 1044-45 (2d Cir. 1990) ("obligations imposed by Vermont law are not relevant because liability for failure to protect from harm under § 1983 must be based on a violation of federal constitutional or statutory law, not state law").

Further, even if reliance on state law were permitted here, it is not clear that appellants could show that the Chiefs' actions were in violation of a clearly established right, as the Connecticut Superior Court held in Ambrogio v. Board of Firearms Permit Examiners, 42 Conn. Supp. 157 (1992), that the provisions of Conn. Gen. Stat § 29-28a(b) are *directory*, not mandatory.[33]

---

[33] "Section 29-28a(b) provides that the eight week time period begins to run 'after a *sufficient application* for permit has been made'. Section 29-29 defines what constitutes a sufficient application…[t]he language of the statutory sections in

Because the appellants are unable to rely on Connecticut regulations to demonstrate a clearly established right to a timely permit, and because they have not otherwise provided any controlling authority to demonstrate the same, the district court did not err in dismissing claims against Chiefs Thody and Dominguez on the basis of qualified immunity.

## V.   The District Court Did Not Abuse its Broad Discretion in Declining to Exercise Jurisdiction Under the Declaratory Judgment Act.

"The Declaratory Judgment Act ["DJA"] states that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added).  The permissive language of the act necessarily grants district courts broad discretion "to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."  Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).  "A district court abuses its discretion if it bases its ruling on a mistaken application of the law or a

---

question is consistent with the conclusion that these provisions are directory and not mandatory.  The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or convenience.  If it is a matter of substance, the statutory provision is mandatory.  If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. … Further, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory. Ambrogio v. Board of Firearms Permit Examiners, 42 Conn. Supp. 157, 161-62 (1992) (internal citations omitted).

clearly erroneous finding of fact." United States v. Adams, 448 F.3d 492, 498-99

(2d Cir. 2006)."

The appellants agree with the district court that the following factors should

guide the court's decision on whether to exercise their discretion under the DJA:

> (1)Whether the [declaratory] judgment [sought] will serve a useful
> purpose in clarifying or settling the legal issues involved; (2) whether
> [such] a judgment would finalize the controversy and offer relief from
> uncertainty; (3) whether the proposed remedy is being used merely for
> procedural fencing or a race to res judicata; (4) whether the use of a
> declaratory judgment would increase friction between sovereign legal
> systems or improperly encroach on the domain of a state or foreign
> court; (5) whether there is  a better or more effective remedy; … and
> (6) whether concerns for judicial efficiency and judicial economy favor
> declining to exercise jurisdiction[.]

Admiral Ins. Co. v Niagara Transformer Corp., 57 F.4th 85, 96 (2d Cir. 2023).

The appellants do not contest the third or fourth factors, but disagree with

the Court's findings as to the first and second factors, and additionally believe that

the fifth and sixth factors weigh in appellants' favor.

However, critically, "no single factor is dispositive in mandating that a

district court should exercise its jurisdiction under the DJA.  Instead, the factors are

non-exhaustive, and a district court retains 'wide latitude' to address other factors

relevant to considerations of practicality and wide judicial administration."[34]

---

[34] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 27 (citing
Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist., 673 F.3d
84, 105 (2d Cir. 2012).

Given this, as well as the heightened standard of review, it cannot reasonably be said that the district court abused its discretion in dismissing the appellants' claims for declaratory relief.

### A. The District Court Did Not Err in Using the Unique Circumstances of the COVID-19 Pandemic to Aid its Analysis.

Considering the origin of this litigation, the appellants' contention that "the district court's conclusion that the circumstances presented by this case are unique is not supported by the record"[35] is almost beyond comprehension.  In fact, appellants' complaint plainly references their own prior action filed in response to Governor Lamont's Executive Order 7E.[36]  And in its ruling, the district court explicitly referred to the declaration of "a public health emergency amid the COVID-19 pandemic" as well as "a series of executive orders to address the impact of COVID-19 within [Connecticut]."[37]

The fact that fingerprinting had resumed prior to the filing of the instant action did not magically make the COVID-19 pandemic disappear, and the district court was well within its discretion to consider this context.  "When considering a motion made pursuant to Rule 12(b)(6), the Court may take judicial notice of documents retrieved from official government websites or other relevant matters of

---

[35] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 41.
[36] 08/30/2021 Complaint (Doc. 1), ¶ 38.
[37] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 6-7.

public record. Moreover, the Court may take judicial notice of facts regarding

COVID-19." Does 1-2 v. Hochul, 632 F. Supp. 3d 120, 127 n.1 (E.D.N.Y. 2022)

(internal citations omitted); see Office Solution Group, LLC v. National Fire

Insurance Company of Hartford, 544 F. Supp. 3d 405, 412 ("[a]ccordingly, the

Court can properly take judicial notice of Executive Orders in considering

Defendant's motion [pursuant to 12(b)(6)]").

    **B.**    **The District Court Properly Found That a Declaratory Judgment Would Not Serve a Useful Purpose in Clarifying the Legal Issues nor in Finalizing the Controversy, and the Appellants Other Concerns Are Without Merit.**

    Appropriately considering the above circumstances, the district court stated

that due to "the particular context in which Defendants' conduct occurred—the

midst of a rare pandemic that caused both staffing shortages and public health

concerns, neither from which police departments were immune—[we find] little

utility in issuing a declaratory judgment as to its constitutionality."[38] The district

court correctly reasoned that "[w]hether a plaintiff is entitled to a timely process on

their firearm application (presuming such right is guaranteed under the

Constitution) likely will depend on a fact-specific inquiry unique to each

case…[h]ere, where the delay was unique to the individual plaintiffs who applied

---

[38] 03/28/2023 Ruling on Defendants' Motion to Dismiss (Doc. 64), p. 27.

for a firearm during a pandemic, a declaratory judgment would not settle the legal issues surrounding timely fingerprinting."[39]

Given the above, the appellants' purported concerns amount to nothing more than handwringing and cannot be sustained.  Appellants state that "without a judgment from the Court or the district court, the Appellees and other local authorities in Connecticut will have no incentive to respect law-abiding citizens' rights and will continue the violate the rights of CCDL members and others while slyly wriggling out of litigation when the risks appear too high."[40]  They further pontificate that a declaration "will stop intentional manipulation of the judicial process to the detriment of average individuals who simply desire to exercise their constitutional rights."[41]  The notion that a declaratory judgment here could provide such far-reaching relief should hardly be entertained.  In fact, the district court has essentially already given the appellants their judgment: the constitutionality of the permit process likely turns on a fact-specific inquiry unique to each case.   Nothing further needs to be said, and in consideration of the heightened standard of review afforded to the district court here, there was no abuse of discretion in dismissing the appellants' claims for declaratory relief.

---

[39] Id. at 28.

[40] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 40.

[41] 06/21/23, Brief of the Plaintiffs-Appellants (Document 42), page 42.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant-appellees, Chief Jason Thody and Chief Renee Dominguez, respectfully request that this Court affirm the district court's order dismissing all claims against them and to enter judgment in their favor.

Respectfully submitted,

DEFENDANT-APPELLEES, CHIEF JASON THODY AND CHIEF RENEE DOMINGUEZ

BY  /ss/ James N. Tallberg
        James N. Tallberg
        Federal Bar No.: ct17849
        Karsten & Tallberg, LLC
        500 Enterprise Dr., Suite 4B
        Rocky Hill, CT 06067
        T: (860)233-5600
        F: (860)233-5800
        jtallberg@kt-lawfirm.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS
AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:

   This brief contains 8,266 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6) because:

   This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Times New Roman, Font Size 14.