# 23-0724

## IN UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

CONNECTICUT CITIZENS DEFENSE LEAGUE, INC.; OREL JOHNSON:
ANNE CORDERO: SHAQUANNA WILLIAMS;

*Plaintiffs-Appellants*,

and

JAMIE EASON

*Plaintiff*

v.

JASON THODY, RENEE DOMINGUEZ, REBECA GARCIA,

*Defendants-Appellees*,

and

FERNANDO SPAGNOLO

*Defendant.*

---

On Appeal from the United States District Court for the
District of Connecticut, No. 3:21-cv-01156-OAW

---

## REPLY BRIEF OF THE PLAINTIFFS-APPELLANTS

---

| | | |
|---|---|---|
| Cameron L. Atkinson, Esq. | Craig Fishbein, Esq. | Doug Dubitsky, Esq. |
| ATKINSON LAW, LLC | FISHBEIN LAW FIRM, LLC | LAW OFFICES OF DOUG DUBITSKY |
| 122 Litchfield Rd. | 100 South Main St. | P.O Box 70 |
| P.O. Box 340 | P.O. Box 363 | North Windham, CT 06256 |
| Harwinton, CT 06791 | Wallingford, CT 06492 | Tel: (860) 933-9495 |
| Tel: (203) 677-0782 | Tel: (203) 265-2895 | Fax: (203) 294-1396 |
| Fax: (203) 672-6551 | Fax: (203) 294-1396 | doug@lawyer.com |
| catkinson@atkinsonlawfirm.com | ccf@fishbeinlaw.com | |

*Attorneys for Plaintiffs-Appellants*

August 8, 2023

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ................................................................................1

ARGUMENT ....................................................................................2

I.    The Supreme Court's Recent Affirmative Action Decision Recognizes Associational Standing In 42 U.S.C. § 1983 Cases.................................................2

II.    The Appellants' Equal Protection Claims Against Appellee Garcia Were Distinct From Their Second Amendment Claims, And The District Court's Dismissal Of Them Violated The Party Presentation Rule. ...................................6

III.    The Appellants Stated Proper Equal Protection Claims. ...........................11

IV.    Courts May Not Raise Qualified Immunity Defenses *Sua Sponte* Without Violating The Party Presentation Rule As The District Court Did In This Case For Appellees Thody And Dominguez. ...................................................16

V.    The Appellees' Conduct Violated Clearly Established Law, Depriving Them of Qualified Immunity. ...........................................................19

    A.    Appellee Garcia did not preserve her argument that qualified immunity should apply to the Appellants' Fourteenth Amendment Due Process claims. ............................................................19

i

C.    The Appellants' Second Amendment rights were clearly established. ..

............................................................................................23

CONCLUSION .....................................................................................26

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

.............................................................................................................28

CERTIFICATE OF SERVICE ............................................................29

# TABLE OF AUTHORITIES

**Cases**

*Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1974).................................6

*Ahmed v. Holder*, 624 F.3d 150 (2d Cir. 2010) .....................................19

*Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th

    531 (6th Cir. 2021).............................................................4, 5

*Association of American Physicians & Surgeons, Inc. v. Texas Medical Bd.*, 627

    F.3d 547 (5th Cir. 2010) ........................................................5

*Bines v. Kulaylat*, 215 F.3d 381 (3d Cir. 2000).....................................17

*Blissett v. Coughlin*, 66 F.3d 531 (2d Cir. 1995)....................................16

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ........................20

*Booking v. Gen. Star. Mgmt. Co.*, 254 F.3d 414 (2d Cir. 2001)............................19

*Davis v. Scherer*, 468 U.S. 183 (1984) ........................................... 19, 20

*Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573 (N.D.T.X. 2005).......................17

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...............................23

*Graves v. City of Coeur D'Alene*, 339 F.3d 828 (9th Cir. 2003) ...........................17

*Greer v. Dowling*, 947 F.3d 1297 (10th Cir. 2020) .................................17

*Guzmán-Rivera v. Rivera-Cruz*, 98 F.3d 664 (1st Cir. 1996).................................17

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982).............................................16

*Heartland Academy Community Church v. Waddle*, 427 F.3d 525 (8th Cir. 2005)...5

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977)...........3

*Int'l Union, United Automobile Workers v. Brock*, 477 U.S. 274 (1986).................4

*Kelly v. Foti*, 77 F.3d 819 (5th Cir. 1996) ................................................................17

*Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548 (6th Cir. 2021) ........5

*Moore v. Morgan*, 922 F.2d 1553 (11th Cir. 1991).................................................17

*Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F.Supp.2d 679 (S.D.N.Y. 2011) ......................................................................................................................13

*Narducci v. Moore*, 572 F.3d 313 (7th Cir. 2009)...................................................17

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2005) ................................................12

*New York State Club Ass'n v. City of New York*, 487 U.S. 1 (1988) ........................4

*New York State Nat. Organization for Women v. Terry*, 886 F.2d 1339 (2nd Cir. 1989) ......................................................................................................................4

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ...........................................................3

*Outlaw v. City of Hartford*, 884 F.3d 351 (2d Cir. 2018)........................................16

*Robinson v. Pezzat*, 818 F.3d 1 (D.C. Cir. 2016)....................................................17

*Roe No. 2 v. Ogden*, 253 F.3d 1225 (10th Cir. 2001) ...............................................5

*Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010)......................................13

*Stephenson v. Doe*, 332 F.3d 68 (2d Cir. 2003).....................................................17

*Stoenescu v. Jablonsky*, 162 F.R.D. 268 (S.D.N.Y. 1995) ....................................17

*Story v. Foote*, 782 F.3d 968 (8th Cir. 2015)..........................................................17

iv

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 143 S.Ct. 2141 (2023) ............................................................................2, 3

*Students for Fair Admissions, Inc. v. University of North Carolina*, 567 F.Supp.3d 580 (M.D.N.C. 2021) ......................................................................3

*Suarez Corp. Indus. v. McGraw*, 125 F.3d 222 (4th Cir. 1997) ..............................17

*Summe v. Kenton Cnty. Clerk's Off.*, 604 F.3d 257 (6th Cir. 2010) .......................17

*Telesca v. Long Island Housing Partnership, Inc.*, 443 F.Supp.2d 397 (E.D.N.Y. 2006) ...................................................................................17

*Tesser v. Board of Educ. Of City School Dist. Of City of New York*, 370 F.3d 314 (2d Cir. 2004) .............................................................................9

*United States v. Hightower*, 950 F.3d 33 (2d Cir. 2020) ..........................................6

*United States v. Sineneng-Smith*, 140 S.Ct. 1575 (2020) ...................................9, 18

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................3

*Wilkinson v. Austin*, 545 U.S. 209 (2005)...............................................................20

*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995)..........................................13

**Statutes**

42 U.S.C. § 1981 .......................................................................................................2

42 U.S.C. § 1983 ....................................................................................................2, 3

42 U.S.C. § 1985 .......................................................................................................4

Conn. Gen. Stat. § 29-28a .......................................................... 14, 16, 21, 22, 24

Conn. Gen. Stat. § 29-29 .................................................................. 21, 22, 24

Conn. Gen. Stat. § 29-33 .............................................................. 15, 21, 24

Conn. Gen. Stat. § 29-36f ................................................................ 21, 24

Conn. Gen. Stat. § 29-36g .....................................................................24

**Other Authorities**

Fed. R. Civ. P. 10 .........................................................................................7

Fed. R. Civ. P. 23 .........................................................................................4

Fed. R. Civ. P. 61 .........................................................................................9

**INTRODUCTION**

The Appellees each face a tall mountain of their own making to climb. Due to their failures to properly present their arguments to the district court, they struggle mightily to defend the district court's decision dismissing the Appellants' claims. The Appellees now brazenly invoke the ravages of Covid as the impetus for their unconstitutional conduct despite never mentioning it even a single time in any of their numerous briefs in support of their multiple motions to dismiss. The Appellees waived many of their arguments before the district court – arguments the district court was not at liberty to argue on their behalf – and they abandon others before this Court. The result is a procedural and substantive labyrinth that both the Court and the Appellants must now painstakingly pick their way through.[1]

---

[1] Given this labyrinth of what claims and defenses have been raised, waived, abandoned, and asserted, the Appellants list the key ones below:

- Appellee Garcia did not move to dismiss Appellant Cordero's Equal Protection claim on its merits before the district court.
- Appellee Garcia did not move to dismiss Appellant Cordero's Fourteenth Amendment due process claim on qualified immunity grounds before the district court.
- Appellee Garcia raised qualified immunity as a defense to Appellant Cordero's Fourteenth Amendment due process claims for the first time on appeal.
- Appellee Garcia did not move to dismiss Appellant Cordero's Equal Protection Claims based on qualified immunity before the district court.
- Appellees Thody and Dominguez did not move to dismiss any of the Appellants' claims under qualified immunity before the district court.

1

The Appellants focus their arguments on the discreet issues of Appellant Connecticut Citizens Defense League's ("CCDL") associational standing, the distinctions between the arguments made by Appellee Rebeca Garcia and Appellees Jason Thody and Renee Dominguez, whether the district court's *sua sponte* invocations of issues of law and fact were procedurally proper, and whether the district court's qualified immunity analysis was proper. For the remaining issues, the Appellants rest on their opening brief and ask the Court to reverse the district court's wholesale dismissal of their claims.

## ARGUMENT

### I.  The Supreme Court's Recent Affirmative Action Decision Recognizes Associational Standing In 42 U.S.C. § 1983 Cases.

After the Appellants filed their opening brief in this matter, the Supreme Court decided *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 143 S.Ct. 2141 (2023). *SFFA* featured two challenges by Students for Fair Admissions, Inc. against the use of affirmative action at Harvard College and the University of North Carolina ("UNC"). *SFFA*, 143 S.Ct. 2141. In its case against the University of North Carolina, SFFA, Inc. brought claims under 42 U.S.C. §§ 1981

---

The labyrinth understandably confused the district court, which decided many of these issues that the Appellees waived. Its decision, however understandable, improperly affected the Appellants' substantial rights and should be reversed and remanded.

2

and 1983 for Equal Protection violations. *See Students for Fair Admissions, Inc. v. University of North Carolina*, 567 F.Supp.3d 580, 585-586 (M.D.N.C. 2021).

After analyzing UNC's challenge to SFFA's standing under *Warth v. Seldin*, 422 U.S. 490 (1975) and *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977), the Supreme Court concluded that SFFA had associational standing in its case against the UNC. *SFFA*, 143 S.Ct. at 2158-59. The Court drew no distinction between SFFA's 42 U.S.C. § 1983 claims and the other claims that it brought.

The Appellees do not address *SFFA*'s recognition of associational standing in the § 1983 context in their briefs.[2] Instead, the Appellees focus on defending *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011). Their arguments encounter precedential impediments they cannot overcome.

Appellee Garcia first argues that nothing in 42 U.S.C. § 1983's plain language grants a cause of action to organizations. Garcia Br., pp. 23. Appellees Thody and Dominguez present virtually the same argument. Thody Br., pp. 9-11. The Supreme Court, however, has recognized associational standing principles repeatedly in the § 1983 context. *Warth*, 422 U.S. at 493, 511; *SFFA*, 143 S.Ct. at 2158-59. Concluding otherwise would directly contradict both *Warth* and *SFFA*, which bind this Court.

---

[2] Appellee Garcia mentions *SFFA* in a footnote, but she fails to devote any discussion to the § 1983 context and fails to mention that the Supreme Court found SFFA had associational standing on its § 1983 claims. Garcia Br., pp. 18-19 n.17.

3

The Appellees do not address the Appellants' argument that, as this Court recognizes that member organizations have associational standing in 42 U.S.C. § 1985 claims for conspiracy to deprive their members' civil rights, so too should it recognize associational standing in 42 U.S.C. § 1983 claims for actually depriving those rights. *New York State Nat. Organization for Women v. Terry*, 886 F.2d 1339, 1348-49 (2nd Cir. 1989) (citing *New York State Club Ass'n v. City of New York*, 487 U.S. 1 (1988)); *see also Int'l Union, United Automobile Workers v. Brock*, 477 U.S. 274, 290 (1986) ("[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others").

Garcia next warns of a slippery slope, suggesting that associational plaintiffs may only proceed by way of class actions under Fed. R. Civ. P. 23(b)(2) because § 1983 claims necessarily involve the participation of an organization's individual members in the lawsuit. Garcia Br., pp. 12-13. The Supreme Court has never imposed any such requirement in § 1983 cases where it has recognized associational standing, and no circuit court has either. This Court should decline to be the first.

Appellees rely heavily on the Sixth Circuit's criticism of associational standing in *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531 (6th Cir. 2021). Thody Br., pp. 10-13; Garcia Br., pp. 15-16. The Sixth Circuit's criticisms, however, are mere dicta. It acknowledged that

4

Supreme Court precedent binds it to applying the associational standing doctrine. *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 542. The same Supreme Court precedents bind this Court, and the Supreme Court has added to them in *SFFA* by reapplying the associational standing doctrine in the § 1983 context.

Finally, Appellees Thody and Dominguez levy the scurrilous allegation that the Appellants have made a misrepresentation to the Court rather than stating a legitimate legal argument. Thody Br., p. 9. By insinuation, they attempt to twist the Appellants' argument that "*Warth* held that associations are entitled to invoke the federal courts' jurisdiction in a § 1983 action" from a legitimate legal argument recognized by federal circuits across the country into misconduct on the part of Appellants' counsel. Thody Br., p. 9.

At least four federal circuit courts have specifically relied on *Warth* to permit associational standing in § 1983 cases. *See Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021); *Association of American Physicians & Surgeons, Inc. v. Texas Medical Bd.*, 627 F.3d 547, 553 (5th Cir. 2010), *Heartland Academy Community Church v. Waddle*, 427 F.3d 525, 532-33 (8th Cir. 2005); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1230 (10th Cir. 2001). Thus, Appellees Thody and Dominguez's accusations against the Appellants are misplaced.

In addition to these circuit courts, the Supreme Court has again spoken on this issue in *SFFA*, allowing associational standing claims to proceed in § 1983 cases.

5

The overwhelming majority of the federal circuits permit associational standing claims in § 1983 claims. Now, *SFFA* frees this panel from the precedential death-grip of *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1974). *See United States v. Hightower*, 950 F.3d 33, 36-37 (2d Cir. 2020) (recognizing that a panel of this court may overrule controlling circuit precedent when an intervening Supreme Court decision creates a conflict, incompatibility, or inconsistency between the Court's precedent and the Supreme Court precedent). Thus, this Court is now free to – and is indeed bound to –follow the Supreme Court's precedent in *SFFA* and recognize that CCDL has associational standing to assert § 1983 claims on its members' behalf.

## II.    The Appellants' Equal Protection Claims Against Appellee Garcia Were Distinct From Their Second Amendment Claims, And The District Court's Dismissal Of Them Violated The Party Presentation Rule.

Appellee Garcia argues that Appellant Cordero's Equal Protection claim against her was inextricably intertwined with her Second Amendment claim by virtue of an incorporation paragraph.[3] Garcia Br., p. 19. She also argues that Cordero's Equal Protection claims are inseparable from her Second Amendment claims because she alleges that Garcia's conduct deprived her of her Second Amendment rights. *Id*. at 20. Under Garcia's reasoning, the district court had

---

[3] An incorporation paragraph is a standard pleading practice designed to avoid the unnecessary repetition of factual allegations as to each count of a complaint.

6

unfettered power to dismiss claims against Garcia that Garcia never moved to dismiss. *Id*. at 19-23. These arguments are unavailing.

First, the mere inclusion of incorporation paragraphs does not render separately delineated causes of action inseparable for purposes of evaluating their legal merits. In fact, Fed. R. Civ. P. 10(c) explicitly provides for incorporation by reference. Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."). This provision comports with the overall purpose of Fed. R. Civ. P. 10 by making complaints and other pleadings clearer to read and eliminating the need to restate the entire set of factual allegations under each count. Thus, it is a well-established pleading practice for parties to incorporate every preceding paragraph in their complaints into the next count that they plead so that they may have the full benefit of all of their factual allegations without having to restate them each time. Nothing in Fed. R. Civ. P. 10 suggests that this ubiquitous practice of incorporation converts separately delineated claims into a single count and empowers a district court to *sua sponte* dismiss claims that no party asked to be dismissed.

Second, the Appellants collectively alleged disparate treatment separate and distinct from their Second Amendment claims. In particular, the Appellants, including Cordero, alleged that the Appellees, including Garcia, were violating their rights to equal protection by acting as agents of the state of Connecticut and

implementing a state regulatory framework in a manner that treated the Appellants far differently from their fellow Connecticut citizens as well as out-of-state residents. App.66-67, ¶¶ 135-141. The Appellants alleged the facts to support their legal claims too, describing how the vast majority of Connecticut cities and towns process temporary state pistol permits quickly whereas the Appellees forced the Appellants to wait for months and even years. App.45-51, ¶¶ 40-41, 46, 50, 60. Finally, the Appellants highlighted that the Appellees' conduct had disparately impacted racial minorities. App.51, ¶¶ 59, 61.

These allegations clearly separate the Appellants' Second Amendment claims – which sought redress for the functional denial of their right to purchase, keep, and bear arms – from their Equal Protection claims – which sought redress for how the Appellants were being treated differently. Even if the district court's grant of qualified immunity to Appellee Garcia on the Appellants' Second Amendment claims was proper– which it was not – a finding that no clearly established right existed to obtain a temporary state pistol permit within the state's statutory timeframe is far different than a finding that no clearly established right exists to be treated equally in a state regulatory framework, especially when the disparate treatment complained of implicates immutable characteristics such as race. Thus, Appellee Garcia's argument that Cordero's Equal Protection claim is

8

indistinguishable from her Second Amendment claim is factually and legally meritless.

Third, Appellee Garcia's argument that Appellee Thody and Dominguez's arguments for dismissal of the Appellants' Equal Protection claims against them relieved Garcia of her obligation to make her own case on the issue and relieved the district court of the party presentation rule is essentially an appeal to the harmless error doctrine. The harmless error doctrine, however, only applies when an order or judgment does not affect "any party's substantial rights." Fed. R. Civ. P. 61, *see also Tesser v. Board of Educ. Of City School Dist. Of City of New York*, 370 F.3d 314, 319 (2d Cir. 2004). When a court goes well beyond the arguments presented by the parties and reaches issues that a counseled party does not raise though, it massacres a party's substantial rights – particularly a party's right to be fairly notified and heard on questions of law and fact. *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020).

"Our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id*. at 1579 (internal citations and quotation marks omitted, alterations in original). In *Sineneng-Smith*, the Supreme Court held that the Ninth Circuit went well beyond the bounds of the party-presentation rule when it raised three new issues that the parties did not. *Id*.

There is no difference in the present case. Experienced counsel represented Appellee Garcia separate and apart from counsel representing Appellees Thody and Dominguez. With her counsel, Appellee Garcia made her own litigation choices, developed her own factual and legal arguments, and filed her own pleadings and briefs.

Appellee Garcia had numerous opportunities to raise her challenges to Cordero's Equal Protection claims in her several motions to dismiss, but she deliberately chose not to. Her failure to do so framed the issues for the district court's consideration and prevented it from raising new ones. When the district court *sua sponte* raised a motion to dismiss on Garcia's behalf, it deprived Cordero of any opportunity to be heard as to Garcia's non-existent arguments. The district court's error is anything but harmless as it directly affects Cordero's substantial rights, and violates the party-presentation rule.[4]

Appellee Garcia also suggests that, if the Court agrees with Cordero and remands her Equal Protection claim, the law of the case doctrine would ensure a speedy end to the case through a motion for summary judgment or a motion for judgment on the pleadings. Garcia Br., p. 22-23. Her thinking is more than wishful.

---

[4] Under Appellee Garcia's argument, she and the other Appellees could advance directly conflicting arguments in their separate briefs, yet she would be entitled to the same benefit as the other Appellees if the district court adopted the argument that she, herself, specifically rejected. Avoiding just this type of scenario is one of the reasons the party presentation rule exists.

If the Court remands Cordero's Equal Protection claims, Cordero will be entitled to conduct discovery on the merits of her claims in the normal course of litigation. If the district court took any other course of action, it would again be acting as an advocate, rather than a neutral arbiter. Instead, on remand, the district court will be duty-bound to impartially consider the evidence adduced during discovery and presented under a motion for summary judgment or to give Cordero sufficient time to conduct discovery and flesh out the allegations of her complaint.

For these reasons, this Court should reject Appellee Garcia's arguments and reverse the district court's dismissal of Appellant Cordero's Equal Protection claims.

## III.   **The Appellants Stated Proper Equal Protection Claims.**

The Appellees each contest whether the Appellants stated proper Equal Protection claims. The Appellees raise different arguments though. First, Appellee Garcia argues that the Appellants failed to present their selective enforcement argument to the district court and failed to adequately allege impermissible motives for discrimination. Garcia Br., pp. 23-26.

Appellee Garcia's argument that the Appellants failed to present their selective enforcement argument to the district court contradicts itself. Garcia cites the Appellants' summarization of their Equal Protection claims in front of the district court as support, but the very summarization that Garcia quotes demonstrates that the Appellants did, in fact, present a selective enforcement claim to the district court:

11

"The thrust of the Plaintiffs' equal protection claim is that the Individual Plaintiffs and other CCDL members living in Hartford, Bridgeport and New Haven, have been, and are being, treated differently from other similarly situated individuals across Connecticut who seek to have their fingerprints processed in order to obtain a permit required under state law to exercise their Second Amendment rights." Garcia Br., pp. 23-24 (quoting 04/29/2022 Plaintiffs Memorandum of Law in Opposition to [Motions to Dismiss], (Doc. 58), p. 22 of 25 in the filed document. (Page 21 in the original)). There is no question that the Appellants presented a selective enforcement claim to the district court, that the district court considered it, and that the district court rejected it. App.18-20. Garcia's claim that the Appellants' argument now was unpreserved is demonstrably contradicted by the very record Garcia cites for the opposite proposition.

Second, Appellees Thody and Dominguez argue that the Appellants failed to show that they were treated differently from similarly situated individuals within their jurisdictions and that they also failed to allege impermissible motives. Thody Br., pp. 16-20. Appellees Thody and Dominguez improperly seek to impose the "class of one" standard of *prima facie* identicality on the Appellants. Thody Br., pp. 17-18 (citing *Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2005)). This heightened standard, however, is not appropriate in this case. To properly plead an equal protection claim based on selective enforcement, a plaintiff must establish that:

12

(1) [he], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (internal citations and quotation marks omitted).

District courts in the Second Circuit currently disagree over whether the "class of one" standard applies to selective enforcement claims or whether a less demanding test applies. *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F.Supp.2d 679, 693-697 (S.D.N.Y. 2011) (discussing the split of authority). The Appellants, however, submit that *Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010) controls. *Ruiz* analyzed Equal Protection and Title VII claims under the same framework, and it held that "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Ruiz*, 609 F.3d at 494 (internal quotation marks and citations omitted). Thus, the less demanding test applies.

Appellees Thody and Dominguez argue that, as a bare minimum, alleged comparators must reside within their jurisdictions to be similarly situated. Thody Br., p. 18. They make no effort to address the Appellants' argument that they are agents of the state of Connecticut in processing temporary state pistol permit

13

applications, thus making the relevant class of comparators all similarly situated Connecticut citizens. *See* Appellants' Br., pp. 17-20. Two people living on opposite sides of the same street are both subject to the same statutory requirements for obtaining state authorization to purchase and possess a firearm for self-defense. However, if one house is in Hartford or New Haven, and the other house is in West Hartford or Woodbridge, the agents carrying out the statutory permitting functions on behalf of the state are different for those living in each house. Yet because the statutory process is the same state-wide, and because both are seeking a state permit from a state agent, each person should be treated the same, regardless of which house they live in. Appellees Thody and Dominguez make no argument why these two people should be treated differently. Mere conclusory assertions that the Appellants' argument is "absurd" cannot carry the Appellees' burden.

All of the Appellees argue that the Appellants have failed to allege impermissible motives. Garcia Br., pp. 25-26; Thody Br., pp. 19-20. The Appellants have, however, alleged facts that demonstrate the Appellees' intentional inhibitions of their constitutional rights through specific acts, practices, and policies.

Each of the Appellants alleged that they sought by request to submit applications for temporary state pistol permits from the Appellees. App.45-50, ¶¶ 40-41, 46, 50. Connecticut law required the Appellees to process those applications within eight weeks of the requests being made. *See* Conn. Gen. Stat. § 29-28a(b).

Instead of doing what is required by state statute, the Appellees obfuscated. Appellee Thody instructed Appellant Johnson to put his name on a waiting list for an indefinite period of time. App.45-46, ¶¶ 40-41. Appellee Dominguez instructed Appellant Williams to sign up for a fingerprinting appointment online, and Dominguez's system informed Williams that the first available fingerprinting appointment was more than seven months from the date Williams requested to apply for a temporary state pistol permit. App.47-48, ¶¶ 45-46. Appellee Garcia and her officers delayed repeated requests from Appellant Cordero for approximately two and a half years as Cordero sought to apply for her temporary state pistol permit. App.48-49, ¶ 50.

Since a person must obtain a Connecticut pistol permit to legally purchase or carry a handgun in Connecticut, the Appellees' conduct – as agents of the state of Connecticut – selectively denied the Appellants their Second Amendment right to obtain and keep handguns for self-defense. *See* Conn. Gen. Stat. § 29-33(b).

None of the Appellees addressed the Appellants' argument on this point.

Finally, all of the Appellees urge the Court to brush aside the Appellants' allegations that their administration of Connecticut's pistol permitting system has disparately impacted minorities. Garcia Br., pp. 18-19; Thody Br., 19-20. The Appellees, however, collectively and individually administer Connecticut's pistol permitting system in the Connecticut cities that have a higher population of African-American and Hispanic residents than any other municipality in Connecticut.

15

App.51. ¶ 59. The vast majority of Connecticut cities and towns with substantially lower African-American and Hispanic populations typically process temporary state pistol permits within the eight weeks allowed by Conn. Gen. Stat. § 29-28a(b). Due to the Appellees' selective enforcement of the fingerprinting requirements, Bridgeport, Hartford, and New Haven disparately prejudice racial minorities from exercising their Second Amendment rights. App.51, ¶ 61.

These allegations are sufficient to entitle the Appellants to conduct discovery as to the Appellees' motives in this case. Thus, the Court should reverse the district court's dismissal of the Appellants' equal protection claims.

**IV.** **Courts May Not Raise Qualified Immunity Defenses *Sua Sponte* Without Violating The Party Presentation Rule As The District Court Did In This Case For Appellees Thody And Dominguez.**

First, Appellees Thody and Dominguez committed a fatal procedural error that prevented the district court from dismissing the damages claims against them under the qualified immunity doctrine. While they asserted their qualified immunity defense in their answer, they never included it in a subsequent motion to dismiss. "Qualified immunity is an affirmative defense on which the defendant has the burden of proof." *Outlaw v. City of Hartford*, 884 F.3d 351, 368 (2d Cir. 2018). Because it is an affirmative defense, a defendant bears the burden to plead and adequately develop a qualified immunity defense. *Blissett v. Coughlin*, 66 F.3d 531 (2d Cir. 1995); *see Harlow v. Fitzgerald,* 457 U.S. 800, 815, 819 (1982). When a defendant

does not assert qualified immunity on a motion to dismiss, they have failed to properly plead for its dismissal just as they would for any other affirmative defense. *See Telesca v. Long Island Housing Partnership, Inc.*, 443 F.Supp.2d 397, 405 (E.D.N.Y. 2006); *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 575-76 (N.D.T.X. 2005); *Stoenescu v. Jablonsky*, 162 F.R.D. 268, 270 n.4 (S.D.N.Y. 1995).

Second, the district court did not have authority to *sua sponte* raise qualified immunity defenses for the Appellees Thody and Dominguez. Qualified immunity is inherently a waivable defense, and a party waives it by failing to raise it in a timely fashion. *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003). Allowing district courts to raise it *sua sponte* on a motion to dismiss guts the principles of waiver and converts district courts from neutral arbiters to defense counsel with the authority to both argue and judge a case. Due process does not permit such a result.

The Appellants recognize a split of authority among the circuits on whether courts may raise qualified immunity defenses *sua sponte*.[5] They, however, submit that *Harlow* and *Blissett* place *sua sponte* invocations of the defense outside the

---

[5] *Compare Guzmán-Rivera v. Rivera-Cruz*, 98 F.3d 664, 667-68 (1st Cir. 1996); *Bines v. Kulaylat*, 215 F.3d 381, 386 (3d Cir. 2000); *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 226 (4th Cir. 1997); *Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996); *Summe v. Kenton Cnty. Clerk's Off.*, 604 F.3d 257, 269-70 (6th Cir. 2010); *Narducci v. Moore*, 572 F.3d 313, 323-25 (7th Cir. 2009); *Greer v. Dowling*, 947 F.3d 1297, 1303 (10th Cir. 2020); *Moore v. Morgan*, 922 F.2d 1553, 1557-58 (11th Cir. 1991); and *Robinson v. Pezzat*, 818 F.3d 1, 11 (D.C. Cir. 2016) *with Story v. Foote*, 782 F.3d 968, 969-70 (8th Cir. 2015); and *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 845 n.23 (9th Cir. 2003).

17

power of a court by classifying qualified immunity as a waivable defense. Thus, the Court should decline to endorse the district court's *sua sponte* invocation.

Third, the Appellants will not belabor the point, but qualified immunity is an *individual*, waivable defense. A party must assert it *individually*. One defendant's assertion of qualified immunity is not a blanket assertion for all defendants, even those who have not asserted that defense. "Our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020) (internal citations and quotation marks omitted, alterations in original). Appellees Thody and Dominguez made a deliberate tactical choice not to assert qualified immunity in their motions to dismiss. Since it was their burden to establish the defense, they made a calculated choice to reserve it for later in the proceedings. The district court has no authority to overrule that choice. Thus, because Appellees Thody and Dominguez never asserted qualified immunity in their motions to dismiss, this Court should reverse the district court's dismissal of the Appellants' claims against them on qualified immunity grounds.

**V.** **The Appellees' Conduct Violated Clearly Established Law, Depriving Them of Qualified Immunity.**

    **A.** **Appellee Garcia did not preserve her argument that qualified immunity should apply to the Appellants' Fourteenth Amendment Due Process claims.**

Appellee Garcia makes no effort to respond to the Appellants' argument that she abandoned her claim for qualified immunity with respect to their Fourteenth Amendment due process claims. Garcia Br., pp. 29-30. Instead, she argues solely that the Fifth Amendment has no application to state and local officials. *Id*. at p. 30.

It is well-established that arguments never made before the district court are deemed waived for purposes of appeal. *Booking v. Gen. Star. Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001). Additionally, issues not briefed on an appeal are considered abandoned. *Ahmed v. Holder*, 624 F.3d 150, 153 (2d Cir. 2010).

Appellee Garcia has both waived any argument that qualified immunity shields her from the Appellants' due process claims and abandoned any such argument on appeal for her failure to brief the issue of whether she preserved the argument in front of the district court.

    **B.** ***Davis v. Scherer* does not entirely foreclose the role that state law plays in a qualified immunity analysis for a Fourteenth Amendment due process claim.**

All of the Appellees argue that *Davis v. Scherer*, 468 U.S. 183 (1984) forecloses the Appellants' argument that state law should inform the Court's

19

qualified immunity analysis. Thody Br., pp. 28-29; Garcia Br., pp. 40-41. Their arguments, however, construe *Davis* too narrowly.

*Davis* did establish a general rule that state law cannot clearly establish federal constitutional rights for purposes of qualified immunity. *Davis*, 468 U.S. at 193-196. It, however, did not prohibit such arguments if the state regulation itself is actionable under § 1983 or "bears upon the claim of constitutional right… [asserted] under § 1983." *Id*. at 193. In particular, *Davis* noted that state law may create property interests that the Fourteenth Amendment protects. *Id*. at 193 n.11; *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits"). Additionally, the Supreme Court has recognized that state law may also create liberty interests. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The statutory scheme at issue here and the Appellees' role in it fall into the category of a state-created liberty and property interest. Connecticut has long conditioned a person's right to obtain a handgun for any purpose, including home defense, on the person first obtaining a state pistol permit. *See* Conn. Gen. Stat. §

29-33(b).[6] Connecticut has also recognized that this condition operates as a form of prior restraint on a person's right to obtain firearms, and it enacted clear statutory guidelines on how local authorities such as the Appellees must handle requests for temporary state pistol permits in Connecticut's two-step permitting system.

Conn. Gen. Stat. § 29-28a(a) requires municipal officials like the Appellees to provide applicants with application forms – either immediately for an in-person request or within one week of a request made in any other manner. Conn. Gen. Stat. § 29-29(b) requires these municipal officials to take an applicant's fingerprints and forward them to the Connecticut State Police Bureau of Identification within five days of taking them. Then Conn. Gen. Stat. § 29-28a(b) requires them to make an approval or denial decision within eight weeks of a person's "sufficient application" for a temporary state pistol permit.

The establishment of a time period and non-discretionary processing rules that the Appellees must follow vests the Appellants with a Fourteenth Amendment liberty interest in obtaining a state pistol permit so that they can subsequently obtain a firearm to exercise their constitutional right to self-defense. The permit itself becomes a state-created property interest, of which the Appellees may not deprive any qualified individual.

---

[6] Alternatively, a person may obtain an eligibility certificate for pistols or revolvers under Conn. Gen. Stat. § 29-36f. However, both processes require an applicant to be fingerprinted. Conn. Gen. Stat. §§ 29-28a, 29-36g.

Since state law creates both of these interests, it properly informs the clearly established prong of the qualified immunity analysis.

Applied to the case before the Court, state law clearly establishes the Appellants' rights and the Appellees' obligations. Connecticut has put in place a statutory process for pistol permits through a two-step, statutorily-prescribed system that clearly establishes the expectations of what due process is to look like in the application process. Specifically, Connecticut's statutes establish four components of due process in the application process: (1) local authorities must provide application forms immediately in response to an in-person request for a temporary state pistol permit and within one week for any other type of request – *see* Conn. Gen. Stat. § 29-28a(a); (2) local authorities may not decline to process a sufficient application for a temporary state pistol permit – *see* Conn. Gen. Stat. § 29-28a(b); (3) local authorities must process an application for a temporary state pistol permit within eight weeks of it being made – *see* Conn. Gen. Stat. § 29-28a(b); and (4) local authorities have discretion to issue a temporary state pistol permit before the background check results come back, but they are given no discretion to vary any other timing in the established process. *See* Conn. Gen. Stat. § 29-29(c).

The Appellants have discussed at length in their opening brief how the Appellees have disregarded these mandatory obligations in derogation of the liberty and property interests established by Connecticut law. They need not repeat those

22

arguments here. The record is clear as to just how flagrantly the Appellees have disregarded the Appellants' rights. Thus, the Court should conclude that the Appellants' Fourteenth Amendment due process rights were clearly established and that the Appellees violated them.

## C. The Appellants' Second Amendment rights were clearly established.

All of the Appellees dispute whether the Appellants' Second Amendment rights were clearly established at the time of the Appellees' conduct. Garcia Br., pp. 27-29, 32-39; Thody Br., pp. 27-28. They, however, frame the applicable Second Amendment right in this case as a right to obtain a public carry permit. Garcia Br., pp. 27-29, 32-39; Thody Br., pp. 27-28. In fact, Garcia goes so far as to refer to temporary state permits as "carry permits" or "carry-permits" throughout her brief, even though that term is nowhere in state statute. Garcia Br., pp. 1, 3, 4, 6, 14, 21, 26, 28, 29, 32, 33, 34, 37, 44, 46, 47.[7] This framing is far too narrow and misapprehends the reality of Connecticut law.

Because Connecticut law requires a permit or certificate to legally obtain a firearm even for self-defense in the home, it matters little for purposes of this case whether there was a clearly established Second Amendment right to carry firearms outside the home. Instead, *District of Columbia v. Heller*, 554 U.S. 570 (2008)

---

[7] Connecticut's statutory scheme refers to the permits issued by municipal authorities as "temporary state permits." *See, e.g.*, Conn. Gen. Stat. § 29-28(b).

clearly established – at minimum– that there was an individual right to obtain and keep handguns for home defense under the Second Amendment. Neither the district court nor the Appellees disputes that point, and the district court stated that the right to obtain a firearm had been clearly established for more than twenty years. App.24-25.

Connecticut, however, does not permit a person to obtain a handgun for any purpose, including home defense, without that person first obtaining a state pistol permit or eligibility certificate for pistols or revolvers. *See* Conn. Gen. Stat. § 29-33(b); Conn. Gen. Stat. § 29-36f. Both processes require an applicant to be fingerprinted. Conn. Gen. Stat. §§ 29-28a, 29-36g.

Since these requirements operate as a form of a prior restraint on a person's constitutional right to obtain firearms, Connecticut has enacted clear statutory guidelines on how local authorities such as the Appellees, as agents of the state, must handle requests for temporary state pistol permits.

Conn. Gen. Stat. § 29-28a(a) requires municipal officials like the Appellees to provide applicants with application forms – either immediately for an in-person request or within one week of a request made in any other manner. Conn. Gen. Stat. § 29-29(b) requires these municipal officials to take an applicant's fingerprints and forward them to the Connecticut State Police Bureau of Identification within five days of taking them. Then Conn. Gen. Stat. § 29-28a(b) requires them to make an

24

approval or denial decision within eight weeks of a person's "sufficient application" for a temporary state pistol permit.

When officials such as the Appellees depart from these requirements and indefinitely delay an applicant's application for a temporary state pistol permit by refusing to fingerprint him, they do not simply deprive him of his right to carry a firearm in public. They deprive him of the core Second Amendment right recognized by *Heller* – the right to obtain handguns in for home defense.

Describing the Appellees' conduct as indefinitely depriving the Appellants of their right to obtain firearms for home defense is no exaggeration. Appellee Garcia refused to fingerprint Appellant Cordero for two and a half years and repeatedly misled her as to what steps she needed to take to be fingerprinted. App.48-49, ¶ 50. For almost seven months, Appellee Dominguez refused to even accept Appellant Williams' application for a temporary state pistol permit despite her already having valid fingerprints. App. 47-48, ¶¶ 45-46. Appellee Thody refused to fingerprint Appellant Johnson for more than two-and-half months. App.45-46, ¶¶ 40. One can only imagine if Connecticut required a state permit to buy books or newspapers, and officials in the state's largest cities refused to timely process such permits.

Their conduct is not simply delaying the fingerprinting process or withholding a permit to carry in public. The Appellees' conduct completely bars the Appellants for indefinite periods of time from obtaining firearms for the purpose of defending

25

their homes – a right clearly established in *Heller*. Thus, there is no question that the Appellees violated the Appellants' clearly established Second Amendment rights, and the Court should reverse the district court's grant of qualified immunity to the Appellees as to their Second Amendment claims for damages.

## CONCLUSION

For the foregoing reasons and those stated in their original brief, the Appellants respectfully request that the Court:

1.      Hold that Appellant CCDL could properly plead associational standing as a matter of law and reverse the district court's dismissal of its claims;

2.      Reverse the district court's dismissal of Appellant Anne Cordero's equal protection claims and remand the case to the district court to determine if Appellee Rebeca Garcia adequately asserted qualified immunity against those claims;

3.      Find that the Appellants pled sufficient facts to sustain their equal protection claims sounding in selective enforcement against Appellees Jason Thody and Renee Dominguez;

4.      Reverse the district court's grant of qualified immunity to Appellees Thody and Dominguez on the Appellants' due process and Second Amendment claims due to the Appellees' failure to properly assert their qualified immunity defense in their motions to dismiss;

5.      Reverse the district court's grant of qualified immunity to Appellee

Garcia on the Appellants' Second Amendment and Fourteenth Amendment due

process claims; and

6.      Reverse the district court's decision declining to entertain the

Appellants' claims for a declaratory judgment and dismissing those claims.

Dated: August 8, 2023                       Respectfully Submitted,


_/s//   Doug Dubitsky_____
Doug Dubitsky, Esq.
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.933.9495
Email: doug@lawyer.com


_/s//  Craig C. Fishbein_____
Craig C. Fishbein, Esq.
FISHBEIN LAW FIRM, LLC
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
E-mail: ccf@fishbeinlaw.com


_/s//  Cameron L. Atkinson_____
Cameron L. Atkinson, Esq.
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com


*Attorneys for Plaintiffs-Appellants*

27

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1.    This reply brief complies with the type-volume limitation of Local R. 32.1 because it contains 6,284 words, excluding the parts of the brief exempted by Fed. R. App. P. 32, as determined by the word counting feature of Microsoft Word 2016.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32 and the typestyle requirements of Fed. R. App. P. 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.


Dated: August 8, 2023

/s/ Cameron L. Atkinson /s/
Cameron L. Atkinson

28

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 8, 2023, an electronic copy of the foregoing Reply Brief Of The Plaintiffs-Appellants was filed with the Clerk of the Court using the ECF system and thereby served upon all counsel appearing in this case.

/s/ Cameron L. Atkinson /s/
Cameron L. Atkinson