23-724-cv
*Connecticut Citizens Defense League, Inc. v. Thody*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand twenty-four.

PRESENT:
        RICHARD C. WESLEY,
        DENNY CHIN,
        JOSEPH F. BIANCO,
            *Circuit Judges*.

_____

Connecticut Citizens Defense League, Inc., Orel Johnson, Anne Cordero, Shaquanna Williams,

        *Plaintiffs-Appellants*,

Jamie Eason,

        *Plaintiff*,

        v.                                        23-724-cv

Jason Thody, Renee Dominguez, Rebeca Garcia,

        *Defendants-Appellees*,

Fernando Spagnolo,

        *Defendant*.[1]

_____

---

[1] The Clerk of Court is respectfully directed to amend the caption to conform to the above.

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | CAMERON L. ATKINSON, Atkinson Law, LLC, Harwinton, CT (Craig Fishbein, Fishbein Law Firm, LLC, Wallingford, CT; Doug Dubitsky, Law Offices of Doug Dubitsky, North Windham, CT, *on the brief*). |
| FOR DEFENDANTS-APPELLEES: | JAMES N. TALLBERG, Karsten & Tallberg, LLC, Rocky Hill, CT, for Defendants-Appellees Jason Thody and Renee Dominguez. |
| | RAYMOND J. RIGAT, Chandler K. Holcomb, Berchem Moses, PC, Milford, CT (Richard G. Kascak, Jr., John P. Bohannon, Office of the City Attorney, Bridgeport, CT, *on the brief*), for Defendant-Appellee Rebeca Garcia. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Williams, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Connecticut Citizens Defense League, Inc. ("CCDL"), Orel Johnson, Shaquanna Williams, and Anne Cordero appeal the district court's judgment, entered on March 29, 2023, which granted joint motions to dismiss their claims against Defendants-Appellees Jason Thody, Renee Dominguez, and Rebeca Garcia, the police chiefs, respectively, of Hartford, New Haven, and Bridgeport, Connecticut. In their complaint, Johnson, Williams, and Cordero (the "individual plaintiffs") alleged that they experienced lengthy waiting periods for the processing of their firearm permit applications in those cities. Along with CCDL, a non-profit organization focused on protecting the right to keep and bear arms, the individual plaintiffs brought a claim under the Second Amendment to the United States Constitution directly, as well as claims under 42 U.S.C. § 1983 for violations of the Second Amendment, the Due Process Clauses of the Fifth

and Fourteenth Amendments, the Equal Protection Clause, and the Privileges and Immunities Clause.

This action followed a similar lawsuit by CCDL and six other Connecticut residents against state and local officials relating to the suspension, during the COVID-19 pandemic, of fingerprinting for applicants seeking permits to obtain firearms. *See generally Conn. Citizens Def. League, Inc. v. Lamont*, 465 F. Supp. 3d 56 (D. Conn. 2020) (granting preliminary injunction), *vacated*, 6 F.4th 439 (2d Cir. 2021). On June 8, 2020, the district court in the previous action granted the plaintiffs' motion for a preliminary injunction. *Lamont*, 465 F. Supp. 3d at 74–75. On July 28, 2021, we vacated the preliminary injunction for lack of jurisdiction, holding that CCDL lacked standing and that the "motion was moot with respect to the individual plaintiffs" because the suspension had ended. *Lamont*, 6 F.4th at 448. CCDL filed a notice of voluntary dismissal and initiated the instant action, seeking injunctive relief, damages, and a declaratory judgment under the Declaratory Judgment Act ("DJA"). *Conn. Citizens Def. League, Inc. v. Thody*, 3:21-CV-1156 (OAW), 2023 WL 2687446, at *1, 4 (D. Conn. Mar. 28, 2023).

In a decision dated March 28, 2023, the district court granted joint motions by defendants—one filed by Garcia, and the other by Thody and Dominguez—to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See id.* at *13. The district court concluded that CCDL lacked standing to sue under Section 1983 on behalf of itself or its members and that the individual plaintiffs' claims for injunctive relief were moot because their permit applications had been granted. *Id.* at *6–8. On the merits, as it related to claims for damages, the district court found that the individual plaintiffs had failed to state plausible claims for a direct violation of the Second Amendment or for violations of the Fifth Amendment, the Equal Protection

3

Clause, or the Privileges and Immunities Clause under Section 1983, and that qualified immunity barred any recovery on the remaining claims under Section 1983 for violations of the Second Amendment or the Due Process Clause of the Fourteenth Amendment. *Id.* at *6, 9–12. Finally, the district court "decline[d] to exercise its discretion under the DJA" to issue a declaratory judgment in favor of the individual plaintiffs. *Id.* at *12–13.

Appellants argue that the district court erred in (1) denying associational standing to CCDL as to its Section 1983 claims, (2) holding, with respect to the Section 1983 claims for monetary damages under the Second Amendment and the Due Process Clause of the Fourteenth Amendment, that the defendants were entitled to qualified immunity because they did not violate any clearly established right of the appellants, (3) dismissing the Equal Protection claim for failure to state a plausible claim, and (4) declining to exercise its discretion under the DJA.[2] We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

As set forth below, we conclude that, even assuming *arguendo* that CCDL has associational standing on behalf of its members as to its claims for injunctive relief, those claims are moot, like

---

[2] Appellants do not challenge the district court's dismissal of their direct claim under the Second Amendment, their Section 1983 claim under the Fifth Amendment, their Section 1983 claim under the Privileges and Immunities Clause, or the individual plaintiffs' claims for injunctive relief as moot, nor do they challenge the district court's conclusion that CCDL lacked organizational standing to sue on its own behalf. Those claims are therefore abandoned. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995) (citing Fed. R. App. P. 28(a)(6)); *see also Antonyuk v. Chiumento*, --- F.th ---, Nos. 22-2908 (L), 22-2972 (Con); 22-2933; 22-2987; 22-3237, 2023 WL 8518003, *41 n.52 (2d Cir. Dec. 8, 2023) ("Although parties cannot waive arguments *against* jurisdiction, they are more than free to waive (or forfeit) arguments *for* it." (internal quotation marks and citation omitted)). In dismissing the action, the district court implicitly dismissed appellants' request for a writ of mandamus. *See Conn. Citizens Def. League, Inc.*, 2023 WL 2687446, at *8 (analyzing writ and injunction under same framework). Because appellants do not challenge that determination, their claim for mandamus relief is abandoned as well. *See LoSacco*, 71 F.3d at 92–93.

4

the injunctive claims brought by the individual plaintiffs, and thus were properly dismissed. Moreover, we hold that the Section 1983 monetary damages claims brought by CCDL, assuming *arguendo* that it has associational standing, and the individual plaintiffs—namely, claims under the Second Amendment, the Due Process Clause, and Equal Protection Clause—were properly dismissed on the ground of qualified immunity. Finally, we conclude that the district court did not abuse its discretion in declining to exercise jurisdiction under the DJA over the claim for declaratory judgment.

### 1. Injunctive Relief

Dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is proper when the district court "lacks the statutory or constitutional power to adjudicate" the action, "such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(1) is also proper "when a case becomes moot," *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (internal quotation marks and citation omitted), which occurs "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *Freedom Party of N.Y. v. N.Y. State Bd. of Elections*, 77 F.3d 660, 662 (2d Cir. 1996) (per curiam) (internal quotation marks and citation omitted). "On appeal from a dismissal under Rule 12(b)(1), we review the court's factual findings for clear error and its legal conclusions *de novo*." *Cortlandt St. Recovery Corp.,* 790 F.3d at 417.

To assert associational standing on behalf of its members, CCDL must show that its members would "have standing to sue in their own right." *Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 343 (1977). To establish standing, an individual plaintiff must demonstrate,

5

*inter alia*, that he or she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Even assuming *arguendo* that CCDL had standing to assert Section 1983 claims on behalf of its members,[3] CCDL's claims for injunctive relief—like those of the individual plaintiffs—are moot. In the complaint, CCDL sought "[a] preliminary and permanent injunction ordering the Defendants to change the rules, customs, policies, practices, and procedures at their respective police departments so as to provide for a process under which the Applicants and similarly situated CCDL members[] may timely obtain municipal firearms permits . . . ." Appellants' App'x at 71–72 ¶ 9. With respect to the individual plaintiffs, the police chiefs' failure to provide municipal permits constituted a "concrete and particularized" injury for purposes of Article III standing. *See Lujan*, 504 U.S. at 560. However, because all three individual plaintiffs received their municipal permits while this case was pending, their claims for temporary and permanent injunctive relief became moot. *See Conn. Citizens Def. League, Inc.*, 2023 WL 2687446, at *2 (summarizing dates on which permits were issued). Upon receiving their permits, the individual plaintiffs lost any "legally cognizable interest" in an injunction that would require the police chiefs to provide a timely process for obtaining such permits. *See Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49,

---

[3] The Second Circuit has held that associations lack standing to sue on behalf of their members in Section 1983 actions. *See Warth v. Seldin*, 495 F.2d, 1187, 1194 (2d Cir. 1974); *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). However, CCDL argues that the Supreme Court's recent decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141 (2023), overrules the Second Circuit's prohibition on associational standing in Section 1983 actions. Because we conclude that CCDL's claims for injunctive relief are moot, we need not address this argument.

70, 73 (2d Cir. 2001) (finding moot claims to enjoin allegedly religious activities of school district, where plaintiffs' children had either graduated or moved out of the district since the complaint was filed).

CCDL also vaguely suggests in its complaint that more than ninety-five percent of CCDL's 41,000 "members and supporters" reside in Connecticut, and that, as a result, the "questions of law" affecting the individual plaintiffs are shared with "*potentially* numerous similarly situated residents" of Connecticut "whose constitutional rights have been, and are continuing to be, infringed by the challenged actions of the Defendants." Appellants' App'x at 38–39 ¶ 18, 40 ¶ 21 (emphasis added). The complaint, however, contains not a single factual allegation regarding those CCDL members or their circumstances. Even on appeal, CCDL makes only the generic and conclusory allegation that CCDL "represents thousands, if not tens of thousands, of individuals facing the same unconstitutional conduct that gave rise to this suit," without providing further detail or specifying whether even a single CCDL member has a pending application in one of the cities at issue that has not been timely processed. Appellants' Br. at 14. Accordingly, even assuming *arguendo* associational standing could be asserted by an organization on behalf of its members in a Section 1983 lawsuit, CCDL's blanket allegations that the police chiefs violated the rights of "similarly situated CCDL members" are insufficient to confer standing on behalf of members other than the individual plaintiffs and save its current Section 1983 claims for injunctive relief from dismissal due to mootness. *See, e.g.*, *Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) (explaining that "[w]hile the standard for reviewing standing at the pleading stage is lenient," a plaintiff may not "rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing"); *see also In re Holocaust Victim Assets*

7

*Litig.*, 225 F.3d 191, 196 (2d Cir. 2000) (holding vague and conclusory allegations insufficient to support associational standing). Accordingly, we affirm the dismissal of all claims for injunctive relief.

### 2. Monetary Damages

We next turn to the claims for monetary damages, which were brought under Section 1983 against the police chiefs in their individual capacities. The appellants contend that the district court erred in dismissing the damages claims under Rule 12(b)(6) insofar as they alleged violations of the Second Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. To avoid dismissal under Rule 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We review *de novo* the dismissal of a complaint for failure to state a claim, "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Id.*

The district court addressed the Second Amendment and Due Process claims under qualified immunity, reasoning that "the issue of qualified immunity should be decided 'at the earliest possible stage in litigation.'" *Conn. Citizens Def. League, Inc.*, 2023 WL 2687446, at *11 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). The individual plaintiffs argue that the district court improperly reached this question *sua sponte* as to defendants Thody and Dominguez, in violation of the party presentation rule, and that it erred in ultimately concluding that the appellees were entitled to qualified immunity. We disagree with both contentions.

As a threshold matter, each police chief raised qualified immunity in either an answer (in

8

the case of Thody and Dominguez) or motion to dismiss (Garcia).  Thody and Dominguez additionally raised qualified immunity in their reply brief.  Although Thody and Dominguez did not raise the defense in their original or supplemental motions, the briefing of qualified immunity in Garcia's motion to dismiss placed appellants on notice of the defense as to all defendants because the police chiefs were identically situated as to that legal issue; indeed, appellants filed only a single memorandum in opposition to the police chiefs' five original or supplemental motions to dismiss.  Under these circumstances, the district court did not abuse its discretion in addressing qualified immunity as to all defendants.  *See Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017) ("The discretion trial courts may exercise on matters of procedure extends to a decision on whether an argument has been waived.").

In any event, even assuming that appellants were not on notice of the defense of qualified immunity in the district court as to each defendant, that defense can be raised and decided for the first time on appeal, even after the case has been fully briefed.  *Dean v. Blumenthal*, 577 F.3d 60, 67 n.6 (2d Cir. 2009) ("We consider whether [the defendant] is entitled to qualified immunity even though this argument is put forward for the first time on appeal.")  As we explained in *Dean*:

> Although it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal, this rule is prudential, not jurisdictional, and we have discretion to consider waived arguments.  We have exercised this discretion where the argument presents a question of law and there is no need for additional fact-finding[, which includes the question of] whether a right was clearly established at the pertinent time.

*Id.* (alterations adopted) (internal quotation marks and citations omitted).  Here, the defense of qualified immunity can be resolved as a question of law with no need for further factual development, and it was addressed at length by the district court opinion, the parties' briefs on

9

appeal, and at oral argument, putting appellants fully on notice of the defense. Accordingly, we reject appellants' argument that the defense was waived before the district court by defendants Thody and Dominguez, and we address qualified immunity as to all defendants.

"Qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (alteration adopted) (internal quotation marks and citation omitted). In reviewing a motion to dismiss on qualified immunity grounds, "we determine whether any constitutional right that the defendant allegedly violated 'was clearly established at the time of the alleged violation.'" *Bangs v. Smith*, 84 F.4th 87, 96 (2d Cir. 2023) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)). "In determining if a right is clearly established, this Court looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Absent controlling authority, a plaintiff must show "a robust consensus of cases of persuasive authority." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (internal quotation marks and citation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Doninger*, 642 F.3d at 346 (internal quotation marks and citation omitted).

Appellants cite a single decision—*District of Columbia v. Heller*, 554 U.S. 570 (2008)—for the proposition that the right to timely obtain firearm permits is clearly established. Although *Heller* did establish that "the Second Amendment confer[s] an individual right to keep and bear

10

arms," *id.* at 595, it was silent on the issue here of wait times for permit applications. The Supreme Court did note in a footnote in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 38 n.9 (2022), that it "do[es] not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications . . . deny ordinary citizens their right to public carry," but this language not only is *dicta*—*Bruen* concerned New York's requirement that applicants show a special need to obtain a license, *id.* at 11—but also was issued after the police chiefs' conduct in this case, making it irrelevant to a determination of the clearly established law at the time of their conduct. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("If the law at that time [of the official's conduct] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."). Moreover, although *Bruen*'s language leaves open the possibility of a future constitutional challenge to lengthy wait times, the purpose of the footnote was to clarify that "nothing in [*Bruen*'s] analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes," *Bruen*, 597 U.S. at 39 n.9, and *Bruen* lacks the details that would make "the contours of [a] right" to timely processing "sufficiently clear [to] a reasonable official." *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023) (internal quotation marks and citation omitted).

Rather than identifying additional "Supreme Court or Court of Appeals case law on the subject," *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014), appellants rely on Connecticut's statutory scheme, arguing that "[t]hese statutes—coupled with *Heller*—are sufficient to put any local official . . . on notice that indefinitely denying an eligible person their right to obtain a firearm would violate their Second Amendment rights." Appellants' Brief at 31. A Section 1983 action,

11

however, must be based on a violation of federal constitutional or statutory law, and a state statute cannot clearly establish the relevant *federal* law for purposes of qualified immunity. *See P.C. v. McLaughlin*, 913 F.2d 1033, 1045 (2d Cir. 1990) ("[L]iability . . . under § 1983 must be based on a violation of federal constitutional or statutory law, not state law."); *Robison v. Via*, 821 F.2d 913, 922 (2d Cir. 1987) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim.").

No case authority clearly establishes that the police chiefs' conduct violated a federal right of the appellants. As the district court explained, despite Supreme Court precedent affirming "that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense," it had "not found any case to hold that a seven-month (or even a two-year) delay in obtaining a firearm permit violates the Constitution." *Conn. Citizens Def. League*, 2023 WL 2687446, at *12. Appellants have not identified any such case, nor—with the exception of one out-of-circuit case—are we aware of one.[4] Accordingly, their claims for monetary damages for violations of the Second Amendment and the Due Process Clause of the Fourteenth Amendment were properly dismissed under the doctrine of qualified immunity.

---

[4] The sole out-of-circuit case on point is the Fourth Circuit's recent decision in *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038 (4th Cir. 2023), *reh'g en banc granted*, --- F.4th ---, No. 21-2017 (L), 2024 WL 124290 (4th Cir. Jan. 11, 2024), which likewise post-dated the conduct at issue. In that case, applying footnote nine in *Bruen*, the Fourth Circuit held on November 21, 2023 that a thirty-day review period was unconstitutional. *Id.* at 1049. In addition to being subsequent to the conduct at issue, we have since questioned its holding. *See Antonyuk*, 2023 WL 8518003, at *23 n.24 ("We find it especially difficult to square the court's conclusion that a thirty-day review period is per se an unconstitutional temporary deprivation of Second Amendment rights with *Bruen*'s contrasting statements that *lengthy* wait times would deny ordinary citizens their right to public carry." (alterations adopted) (internal quotation marks and citations omitted)). In short, *Moore* certainly does not amount to a "robust consensus of cases of persuasive authority" at the time of the alleged conduct. *See al-Kidd*, 563 U.S. at 742 (internal quotation marks and citation omitted).

Dismissal of the claim for monetary damages under the Equal Protection Clause for failure to state a claim of selective enforcement was likewise proper. Although the district court did not discuss qualified immunity in dismissing the Equal Protection claim—dismissing it, instead, on the merits—we need not address the merits because we conclude that dismissal on the ground of qualified immunity is warranted on this claim. *Boulé v. Hutton*, 328 F.3d 84, 92 (2d Cir. 2003) ("We may affirm a judgment on any ground appearing in the record, even one on which the district court has not relied.").

Appellants' Equal Protection claim rests on an alleged difference in the wait times faced by applicants in Hartford, New Haven, and Bridgeport, and applicants in other Connecticut municipalities. Appellants alleged "[u]pon information and belief" that "the vast majority of cities and towns in Connecticut with far lower Black/African-American and Hispanic/Latino populations than [Hartford, New Haven, and Bridgeport] typically accept and process applications for municipal firearm permits within . . . eight weeks," while Hartford, New Haven, and Bridgeport, "which have the highest Black/African-American and Hispanic/Latino populations in the state . . . subject their residents . . . to the longest delays." Appellants' App'x at 51 ¶¶ 60–61. Appellants' complaint did not allege that this distinction was the result of any state law or policy; rather, appellants seek to hold the individual police chiefs of Hartford, New Haven, and Bridgeport responsible for denying residents within their jurisdictions of equal protection of the laws, on the theory that residents of other municipalities face shorter wait times.

To assert a claim of selective enforcement under the Equal Protection Clause, "the plaintiff must ordinarily show (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as

13

intent to inhibit or punish the exercise of constitutional rights." *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (alteration adopted) (internal quotation marks and citation omitted).

The district court held that appellants failed to state a claim under the first prong because their proposed comparators are individuals residing *outside* the individual plaintiffs' municipalities and, as such, they were not "similarly situated" to the individual plaintiffs. The district court explained that "[t]he fact that an applicant in one town may be fingerprinted faster than an applicant residing in another town has no bearing on whether Defendants have engaged in differential treatment" because "[e]ach of the Defendant Police Chiefs ha[s] only the authority to review applications from individuals residing within their respective municipalities." *Conn. Citizens Def. League,* 2023 WL 2687446, at *9.

Appellants argue that the district court erred in its analysis and contend that these allegations support a plausible selective-enforcement claim. However, we need not address the merits of the issue because, at a minimum, there was no clearly established law at the time of the conduct at issue that an Equal Protection violation for selective enforcement could occur if officials in one jurisdiction did not process applications as quickly as officials in another jurisdiction. Because no case authority clearly establishes that the police chiefs' conduct violated appellants' constitutional rights in that situation, we affirm the dismissal of the Equal Protection claim on the ground of qualified immunity.

### 3. Declaratory Judgment

Appellants' final challenge is to the district court's decision not to exercise jurisdiction under the DJA. We review a district court's decision not to exercise jurisdiction under the DJA

over a declaratory judgment claim "deferentially, for abuse of discretion." *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005). In the Second Circuit, the exercise of discretion in declaratory judgment cases is guided by:

> (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

*N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (internal quotation marks and citation omitted). No single factor is dispositive; rather, district courts have "broad discretion to weigh the[se] factors" and also have "wide latitude to address other factors as relevant." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 100 (2d Cir. 2023).

Here, the district court found that a declaratory judgment was unlikely either "to finalize the controversy" or "to serve an otherwise useful purpose in clarifying the legal issues." *Conn. Citizens Def. League, Inc.*, 2023 WL 2687446, at *13. In particular, it noted that the alleged wait times occurred during both "an unprecedented spike in permit applications" and "a rare pandemic that caused both staffing shortages and public health concerns," and therefore a declaratory judgment on these facts would do little to clarify the general legal obligations of the parties when such conditions are not present. *Id.* More generally, the district court observed that the precise nature of timely process to which an applicant is entitled on a firearm application would depend significantly on the facts of each application, rendering a declaratory judgment on the specific facts here unlikely to finalize any larger controversy regarding wait times, and that in light of the facts that the plaintiffs had received their permits and "alleged no actual harm arising from their

15

respective waiting periods," a declaratory judgment would do little to serve a useful purpose. *Id.* We discern no basis to disturb the district court's reasonable weighing of these factors and affirm its decision not to exercise jurisdiction under the DJA over the declaratory judgment claim.

*   *   *

We have considered appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court